**ARROW, EDELSTEIN & GROSS, P. C., Plaintiff,**

v.

**ROSCO PRODUCTIONS, INC.; Navel Engagements, Inc.; Moonpie Music Company; Gary Rossington and Allen Collins, Defendants.**

**No. 81 Civ. 5471 (KTD).**

United States District Court, S. D. New York.

April 8, 1982.

---

Law Offices of Michael B. Pollack, New York City, for plaintiff; Elliott H. Pollack, New York City, of counsel.

Martin E. Silfen, P. C., New York City, for defendants; Martin E. Silfen, Jeanne A. Glasser, New York City, of counsel.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, a professional corporation-law firm, brought this suit against the various corporate defendants and the individual defendants Gary Rossington and Allen Collins to recover fees in accordance with what allegedly is a written fee contract. The plaintiff alleges that the individual defend- ants hired the law firm to negotiate certain agreements in the entertainment field between them and the corporate defendants and that this fee contract provided that the law firm would be paid a percentage of the gross receipts of the various defendants. Defendants originally moved to dismiss Counts II through V which are allegedly based on a September 10, 1979 written contract between the parties. Defendants argued that the alleged written contract had never been signed by the individual defendants on their own behalf or on behalf of any of the corporate defendants. The motion originally was brought under Rule 12(b) of the Federal Rules of Civil Procedure. In view of the fact that a number of affidavits and exhibits were introduced with the original 12(b) motion, I deemed the motion as one for summary judgment under Rule 56 and instructed the parties to submit whatever documents and evidence they deemed appropriate in connection with such a motion.

From all that is before me, certain facts appear to be beyond dispute. The plaintiff law firm did render some services to the defendants and billed for these services. On September 10, 1979 the plaintiff law firm sent a letter to the defendants which provided "you agree to compensate us for our services by paying to us the sum of five percent (5%) of your gross earnings at the end of each month. You hereby assign to us an interest in such gross earnings to the extent of five percent (5%) thereof." This letter agreement at the bottom stated "Accepted and Agreed" and provided for the signatures of the two individual defendants; however, it was not signed by the defendants. Apparently there were some discussions about effecting the arrangement described in the letter but the content of those discussions is in dispute. In any event, on October 8, 1979, plaintiff sent a revised letter contract to the defendants (dated October 3, 1979) which contained basically the same payment provision quoted above. Similarly this proposed contract was not signed by the individual defendants on their own behalf or on behalf of the corporate defendants.

On or about December 14, 1979, plaintiff sent another copy of the retainer agreement dated October 3, 1979 to the defendants which suggested that the proposed revised retainer agreement be signed and returned "for posterity." Apparently, this letter evoked a letter from the individual defendants on December 27, 1979, which provides in relevant part:

In reply to your letter of December 14 regarding your form of payment. We would like to straighten out, finally, that we do not wish to pay anybody a percentage, and that we would prefer to paying you as we have in the past. Whilst on the subject, we would like to see breakdowns of all invoices in the future.

Apparently this rejection by the defendants evoked a letter from Mr. Arrow which provided:

With respect to fees, I believe I told you in the beginning of our relationship that I didn't particularly care on what basis we charged you. When you explained to me what your overall problems were and your general feelings about things, we changed our usual manner of billing and agreed with you in principle to accept a percentage of your income. Subsequently, you asked for a cut-off of our right to receive income. In the future should you terminate our services and I agree to that because I thought it was fair.

When we were in Jacksonville, Gary asked me what would happen if the band was an extraordinary success (as we all hope it will be) and our fees approached some astronomical number. I responded to Gary that, obviously, there is a degree of reasonableness in every decent relationship and all of us would know when we were outside of reasonable boundaries and make an adjustment at that time.

I gather from your letter than [sic] you now wish to go on a straight fee basis. Our firm certainly doesn't object to this, particularly since we have never charged Rossington, Collins Band a dollar for our services up to now. If that is your intention, please call me and I will hold the bill

on the premise that our fees will generally be computed at the rate of five percent (5%) of income as set forth in the letter.

Plaintiff has also submitted the affidavit of Joseph F. Rascoff, a C.P.A. who claims that he was the accountant and financial manager for the various defendants during the period from September, 1979 through August 31, 1980. Mr. Rascoff asserts that it was his understanding that the plaintiff was to receive payment on a percentage basis and that he kept the books and records of income of the various defendants in such a manner that the legal fee would be paid on a five percent of gross earnings basis. Mr. Rascoff also sent a letter to plaintiff dated April 8, 1980, which provides:

During my visit to Jacksonville last week, Gary and Allen requested (actually insisted) that office disbursements such as telephone, photocopying, postage, etc. not be billed as long as our fees are computed on a percentage basis.

[The reference to "our fees" apparently refers not only to the fees of plaintiff but also to Rascoff's own fees.]

It is to be noted that Counts II through V of the complaint are all derived from the September 10, 1979 letter from the plaintiff to the individual defendants.

## DISCUSSION

General Obligations Law Section 5–701 provides in relevant part:

5–701 Agreements required to be in writing.

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms does not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a life time; . . . .

It is clear that the September 10, 1979 letter purports to be an agreement which

by its terms is not to be performed within one year from the making thereof and, thus, falls squarely within the requirements of Section 5–701 of the General Obligations Law.

It is also clear that the September 10 letter was never subscribed by the defendants, the parties to be charged therewith, or by their lawful agent. Thus, the September 10 letter cannot be binding on the defendants here and cannot support Counts II through V of the complaint.

In any event, it seems clear from the documents submitted by the parties that the September 10, 1979 letter was but one step in continuing negotiations between parties which culminated in a rejection of the plaintiff's proposal in the December 27, 1979 letter. *See Scheck v. Francis*, 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970).

In the *Scheck v. Francis* case, plaintiff had been the personal manager of the defendant Francis for a number of years. Suit was brought against the defendant and her business corporation alleging breach of employment agreement covering a five year period. It seems that negotiations had been entered into between the parties and the defendant's attorney had submitted the agreements being sued on to the plaintiff requesting that the plaintiffs find all the copies and have the defendant sign them. The plaintiff signed the agreements but the defendant did not do so. The Court upheld the dismissal of the complaint stating: "It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed." 26 N.Y.2d at 469–70, 311 N.Y.S.2d at 843.

Clearly in this case as in *Scheck* the September 10, 1979 letter upon which plaintiff relies is a clear indication that the parties considered a writing to be necessary.

Plaintiff's reliance on *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953) is entirely misplaced. The *Crabtree* case, as described by the New York Court of Appeals in *Scheck*, held:

[T]hat the memorandum necessary to satisfy the Statute of Frauds may be 'pieced together out of separate writings connected with one another either expressly or by the internal evidence of subject matter and occasion' and that, in case one of the writings is unsigned, they may be 'read together provided that they clearly be refer to the same subject matter or transaction.' However, we expressly declared, that all of the terms of the contract 'must be set out in the various writings presented to the court, and at least one writing, the one establishing a contractual relationship between the parties, must bare the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that is signed . . . .' Furthermore, the court pointed out, although a particular signed writing need not have been 'prepared or signed with the intention of evidencing the contract.' It must have been subscribed 'with intent to authenticate the information therein' and that information must 'evidence the terms of the contract.'

26 N.Y.2d at 470–71, 311 N.Y.S.2d at 843–44 (citations omitted).

The plaintiff in this case suggests that the letter from Rascoff dated April 8 and April 11, 1980 constituted a writing signed by the agent sufficient to satisfy the requirements of the Statute of Frauds. Somehow the plaintiff would have this court relate the April letters from Rascoff to the plaintiff back to the plaintiff's September 10, 1979 letter. To do so, however, totally ignores the December 27, 1979 letter from the defendants to the plaintiff completely rejecting the contract upon which the plaintiff now wishes to bring this action.

Accordingly, it is clear to me that Counts II through V of the complaint must be dismissed. This is not to suggest, however, that injustice will be worked necessarily on the plaintiff because of the Statute of Frauds. Even the defendants herein recognize that if the plaintiff has some relief,

that relief sounds *in quantum meruit*. Accordingly, the plaintiff is granted twenty days in which to replead Counts II through V of the complaint.

The defendants have also raised as a technical defense the question as to whether the plaintiff here is the real party in interest. Apparently, while the law firm was rendering services for the defendant it was known by the name Arrow, Edelstein, Gross & Margolies, P. C. The plaintiff has produced documents showing that the change of name has been appropriately filed with the Secretary of State. The defendants, however, object on the basis that it is unclear as to whether the resultant corporation obtained all of the assets and liabilities of the former firm. Since the plaintiff is to replead the majority of the complaint this argument should be addressed by the plaintiff.

In sum, the motion to dismiss Counts II through V of the complaint is granted with leave to the plaintiff to replead within the next twenty days.

SO ORDERED.