**ARROW, EDELSTEIN & GROSS, P.C., Plaintiff,**

v.

**ROSCO PRODUCTIONS, INC.; Navel Engagements, Inc.; Moonpie Music Company; Gary Rossington and Allen Collins, Defendants.**

No. 81 Civ. 5471 (JMC).

United States District Court, S.D. New York.

Feb. 29, 1984.

Michael B. Pollack, New York City (Elliott H. Pollack, New York City, of counsel), for plaintiff.

Vickers & Rohan, Jacksonville, Fla. (Kenneth Vickers, Jacksonville, Fla., of counsel) for defendants.

CANNELLA, District Judge:

After a nonjury trial on the merits, the Court finds for plaintiff in part.

Defendants' motion for a directed verdict is denied. Fed.R.Civ.P. 50(a).

## FACTS

Plaintiff, Arrow, Edelstein & Gross, P.C., a New York law firm, seeks attorneys' fees for services allegedly rendered to musicians Gary Rossington ["Rossington"] and Allen Collins ["Collins"]. Rossington and Collins contend that although plaintiff rendered the alleged services, they are not individually liable because the services were not rendered to them individually but, rather, were rendered to the three Florida corporate defendants—Navel Engagements, Inc. ["Navel"], Rosco Productions, Inc. ["Rosco"], and Moonpie Music Company ["Moonpie"]. On April 9, 1982, at which time this action was before Judge Duffy, the Court held that no written contract existed between the parties for the recovery of attorneys' fees. *See* Memorandum and Order, 538 F.Supp. 608 (S.D.N.Y.1982) ["April Order"]. When defendants moved to dismiss the second amended complaint, Judge Duffy granted the motion insofar as it was consistent with the April Order and suggested that plaintiff proceed on a theo-

**522**

ry of *quantum meruit.* Memo Endorsed, 81 Civ. 5471 (KTD) (S.D.N.Y. Sept. 8, 1982). A nonjury trial was held on July 13 and 14, 1983 before Judge Cannella.

The Court's findings of fact are: Collins and Rossington became acquainted with Allen Arrow, a partner of plaintiff, while they were members of the musical group Lynyrd Skynyrd, for whom plaintiff performed legal services. Lynyrd Skynyrd was disbanded as the result of an unfortunate plane crash in 1977 in which two members of Lynyrd Skynyrd were killed.[1] Thereafter, Rossington and Collins discussed plans of forming their own band— the Rossington Collins Band ["the Band"] with Arrow.[2] A business relationship developed between Arrow and Rossington and Collins wherein plaintiff, with the assistance of Joseph Rascoff, an accountant and financial manager, organized the Band and formed three corporations to manage the Band's business affairs. The three corporations which were incorporated on October 17, 1979 were: Rosco, which was the recording company for the Band; Navel, which handled touring matters for the Band and became a subsidiary of Rosco; and, finally, Moonpie, which engaged in the business of song publication.[3]

Plaintiff alleges it performed legal services which included: formation of the Band and incorporation of Navel, Rosco and Moonpie; the negotiation of a record contract with MCA Records for the Band; organization and execution of the Band's

1980 Tour; criminal matters; personal advice; and the "Mills" and "Contraband" matters.[4]

A portion of the legal services performed by plaintiff were completed before the formation of the corporate defendants. Plaintiff considered Collins and Rossington as its clients rather than the Band or the corporate defendants. Arrow and Collins and Rossington discussed fee arrangements, as evidenced by a series of letters, but the 5% retainer contract proposed by plaintiff was never signed by Collins or Rossington.[5] In fact, these fee arrangements were first discussed in the fall of 1979, shortly before the formation of the corporate defendants. Thereafter the following procedure was employed for the billing of plaintiff's clients: Rascoff would direct plaintiff to send its bills to one of the three corporations.[6] The record indicates that the corporate defendants were the entities that paid plaintiff.[7]

On September 15, 1980, the relationship between defendants and plaintiff was terminated.[8] On March 1, 1981, plaintiff made a demand for payment from Rossington, Collins, Rosco and Navel in the amount of $66,558.01. At trial, however, and in its post-trial brief, plaintiff sought $123,500 for attorneys' fees. Although the March demand and the posttrial brief seek attorneys' fees for the same services, the discrepancy in damages has not been adequately explained to the Court.[9] Rossing-

---

1. *See* transcript of Trial at 19 [hereinafter "tr."].

2. *Id.* at 20. The Rossington Collins Band was formed by the fall of 1979.

3. *Id.* at 21–22, 99. The Court received the corporate records of Catfish Publishing Co., Inc. but not the records for Moonpie Music Company. It also received records for the two other corporate defendants. *See* Plaintiff's Exh. 1–F [hereinafter plaintiff's exhibits will be referred to as "PX___" and defendants' exhibits will be referred to as "DX___"].

4. Tr. at 88–96.

5. *See* Memorandum & Order, 538 F.Supp. 608 (S.D.N.Y.1982).

6. Tr. at 88, 166.

7. *Id.* at 136, 138.

8. *Id.* at 204.

9. While plaintiff claims that the March 1, 1981 demand was an offer of settlement, there is nothing in the letter that refers to settlement negotiations. Tr. 165–74; Plaintiff's Exh. 1A. Furthermore, plaintiff asserts that the March 1, 1981 "settlement offer" also constitutes its demand for payment. Post Trial Brief at 18. Plaintiff cannot contend that this letter is inadmissible because it is an offer of settlement and then inconsistently argue that it is admissible as a demand for payment. The Court does not find Arrow's testimony credible in this area and disregards it. In questioning the amount allegedly owed plaintiff, the Court notes that the second amended complaint alleges that it is

ton subsequently left the group and Collins formed the Allen Collins Band which is not involved in this action.

While Arrow and Rascoff contend that they considered Rossington and Collins their clients, their actions and the evidence presented do not support such a finding. One of plaintiff's associates who performed work for Rosco and Navel testified that the corporate defendants were formed to shield Rossington and Collins from liability.[10] Furthermore, Rossington and Collins were never informed that they would be personally liable for attorneys' fees.[11] While Rossington and Collins controlled the corporate defendants, all the Band members received royalties from the corporations.[12] Finally, the work performed by plaintiff was rendered for the Band and the corporate defendants. The business records, including correspondence and invoices, refer to the corporate defendants rather than to Rossington and Collins.[13] The MCA contract, for example, was negotiated on behalf of the Band. Likewise, the Band's 1980 tour was organized for the Band in association with Navel. The corporate defendants clearly benefited from plaintiff's professional services.

Rascoff testified that he never billed Rossington and Collins individually, but rather, billed the corporations as a matter of convenience. Having observed Rascoff's demeanor and acknowledging his expertise in the areas of accounting and evaluating the reasonable value of attorneys' fees, the Court does not credit his testimony. Likewise, the Court does not credit Arrow's testimony when he testified that the corporate defendants were billed merely as a convenience for Rossington and Collins. Having formed the corporate defendants, clearly, Arrow was on notice of Rossington and Collins' limited liability.[14] Thus, once the corporations were formed,

they incurred the legal expenses associated with the Band that are the bulk of this litigation.

## DISCUSSION

In a diversity action, a federal court must apply the substantive law of the state in which it sits, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the choice of law rules of the forum state, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, New York choice of law rules govern the instant action and require the Court to examine the interests of each state involved in the litigation, *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963), and apply the law of the state with "the most substantial interest in the issue" to be resolved. *Wheeler v. Standard Tool & Manufacturing Co.*, 359 F.Supp. 298, 301 (S.D.N.Y. 1973), aff'd, 497 F.2d 897 (2d Cir.1974). The two interested states in this litigation are New York and Florida. While substantial contacts occurred in both states, Judge Duffy applied New York law to prior issues that arose in this action. Noting that there has been no suggestion that the law of any state other than New York applies to the issue of the value of attorneys' fees, the Court recognizes that New York has a strong interest in this action, especially since much of the legal work was performed in New York. Accordingly, the Court applies New York law to this issue.

### Expert Witness

The Court reserved decision concerning the qualifications of Rascoff as an expert on the fair and reasonable value of attorneys' fees. Rascoff is an accountant and a business manager in the entertainment industry. His former clients include

---

10. *Id.* at 42.

11. *Id.* at 138–39; 122.

owed $57,164.07. *See* Second Amended Complaint, 81 Civ. 5471 (KTD) (S.D.N.Y. July 13, 1982).

12. *Id.* at 32.

13. *See* PX 1–B, 1–C, 1–D.

14. Tr. at 189.

the Rolling Stones, The Who, J. Geils Band and the Allman Brothers Band. Because of his experience in the entertainment field and his knowledge of attorneys' fees, the Court determines that his testimony was helpful and that he qualifies as an expert in this area. *See* Fed.R.Evid. 702.

With respect to the value of the legal services, the Court observes and defendants concede that plaintiff has extensive experience in entertainment law. Arrow and Rascoff testified as to the reasonable value of attorneys' fees and defendant offered no evidence to the contrary. Nonetheless, for the Court to properly evaluate plaintiff's demand, plaintiff will be permitted to amplify the records already submitted to include the approximate hours spent per matter, hourly rate of the attorneys involved in the action,[15] *see Matter of Cap'n Rick Corp.*, 525 F.Supp. 31, 35 (S.D. N.Y.1981); *City of New York v. Darling-Delaware*, 440 F.Supp. 1132, 1134 (S.D.N. Y.1977), and the specific allocation of liability between Collins and Rossington concerning legal matters discussed, *infra*.[16]

*Quantum Meruit*

■ Initially, the Court notes that "[t]he granting of equitable relief lies within the sound discretion of the trial court, so long as that discretion is exercised in accordance with the applicable established precedents." *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir.1982). When alleging a claim for attorneys' fees on a theory of *quantum meruit*, plaintiff must establish "proof of the services performed, and the value thereof." *People v. Chambers*, 286 A.D. 1042, 1042, 145 N.Y.S.2d 329, 330 (2d Dep't 1955). At trial, defendants did not dispute that plaintiff performed legal services;[17] rather, the issue is whether Collins and Rossington individually or the corporate defendants are liable for plaintiff's professional services.

■ In addition, because plaintiff is proceeding in *quantum meruit* for its professional services, it is entitled to recover interest from the date of the demand of payment which is March 1, 1981. *See Spanos v. Skouras Theatre Corp.*, 235 F.Supp. 1, 17 (S.D.N.Y.1964) (applying New York law), *aff'd in part and rev'd in part*, 364 F.2d 161 (2d Cir.1966), *cert. denied*, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966); *Govern & McDowell v. McDowell & Walker, Inc.*, 75 A.D.2d 979, 980, 428 N.Y. S.2d 367, 368 (3d Dep't 1980); *Brent v. Keesler*, 32 A.D.2d 804, 805, 302 N.Y.S.2d 349, 351–52 (2d Dep't 1969); N.Y.Civ. Prac.Law § 5001 (McKinney 1963).

■ The relationship between plaintiff and Collins and Rossington began sometime in 1978. Plaintiff negotiated, prepared and executed contracts and settlements on behalf of Collins, Rossington, the Band and the corporate defendants. The Court is persuaded that the bulk of plaintiff's services were performed on behalf of the corporate defendants for the following reasons: *First*, while there was a relationship between plaintiff and Collins and Rossington before the incorporation of Navel, Rosco and Moonpie and work was performed prior to that date, Rossington and Collins were never billed individually. Furthermore, plaintiff certainly cannot maintain that it had no notice of the formation of the corporate defendants. Comprised of attor-

---

**15.** The only hourly rate that was discussed during the trial was that of Paul Truss, an associate of plaintiff. Tr. at 43.

**16.** With respect to the requisite breakdowns, the Court requests (1) approximate hours spent per matter; (2) hourly rate; (3) allocation of liability between Collins and Rossington. This information is to be accompanied by an affidavit of the attorney(s) involved.

**17.** At the close of the trial, counsel to Rossington and Collins informed the Court that he would submit a post-trial brief accompanied by various documents. The parties stipulated to extend time for the filing of the post-trial briefs. *See* Order, 81 Civ. 5471 (JMC) (S.D.N.Y. Sept. 7, 1983). On September 29, 1983, the Court had not received the brief for Rossington and Collins although it had received plaintiff's brief. Thus, counsel for Rossington and Collins was informed by letter that the Court was proceeding in this matter without his brief but that it would make a determination in this matter based on the trial and papers previously submitted.

neys, plaintiff is presumed to know that one of the hallmarks of corporations is limited liability of the officers, directors and shareholders. *See Mortimer B. Burnside & Co. v. Havener Securities Corp.*, 25 A.D.2d 373, 269 N.Y.S.2d 724 (1st Dep't 1966) (per curiam).

■■■■ *Second,* Rossington and Collins cannot be held individually liable for corporate obligations unless there is "some direct and explicit evidence of intent." *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 66, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (1961). Although plaintiff argues that Rossington and Collins are liable for its professional services, its actions belie this assertion.[18] The Court notes that one of plaintiff's associates, Paul Truss, testified that if a contract were breached, he would sue one of the corporate defendants rather than Rossington or Collins.[19] Furthermore, while the corporate defendants may have been organized for tax purposes, plaintiff has not attempted to pierce the corporate veil or to argue that corporate formalities were not observed.[20] Once the Band was organized and the corporate defendants were formed, the legal services performed on their behalf are to be incurred by them.[21]

*Legal Services Provided for Rossington and Collins Individually*

■■■ The legal services rendered by plaintiff with respect to defendants' Rossington and Collins' wills, estates and matrimonial matters clearly constitute personal matters for which Rossington and Collins are personally liable. While plaintiff alleges that $3,000 worth of legal work was performed in this regard, plaintiff has not indicated how much is allocated to each individual. Accordingly, the Court requests a breakdown.

Plaintiff represented Collins in various criminal matters which were unrelated to the corporate defendants. Accordingly, personal liability falls on the individual who benefited directly from plaintiff's professional services.[22] To determine whether the fees for the criminal matters are to be assessed solely against Collins, the Court requests a breakdown concerning these criminal matters.

■■■ In addition, plaintiff negotiated an agreement with a musical group called Contraband, whereby it was agreed that Rossington and Collins would not be associated with Contraband. The negotiations concerning Contraband occurred prior to the formation of the Band and the corporate defendants and benefited Collins and Rossington individually. More important, as defendants correctly observe, they concerned personal obligations of Rossington and Collins. While other members of the Band were also benefited by these negotiations, the correspondence that concerns this matter—unlike the correspondence regarding other matters in this action—refers individually to Rossington and Col-

---

18. Plaintiff's reliance on *Worthington v. Griesser,* 77 A.D. 203, 207, 79 N.Y.S. 52, 55 (1st Dep't 1902), for the proposition that Rossington and Collins are personally liable for its legal services is factually distinguishable from the instant matter. In *Worthington v. Griesser,* there was a non-existent corporation, thereby making the officers individually liable for damages. Because there are existing corporations in the instant action, the Court places no reliance on this case.

19. Tr. at 42–43.

20. Courts will pierce the corporate veil only when there is a showing that the corporation was formed for "a fraudulent, illegal or unjust purpose." *Mysels v. Barry,* 332 So.2d 38, 40 (Fla.Dist.Ct.App.1976); *Vantage View, Inc. v. Bali East Development Corp.,* 421 So.2d 728,

734–35 & 735 n. 7 (Fla.Dist.Ct.App.1982). Courts will also pierce the corporate veil when the corporation was formed to "mislead creditors." *Futch v. Southern Stores, Inc.,* 380 So.2d 444, 446 (Fla.Dist.Ct.App.1979) (per curiam). Clearly, plaintiff has not and can not rely on any of these grounds to establish the personal liability of Rossington and Collins.

21. The exact status of the corporate defendants has never been revealed to the Court. The testimony more than suggests that none of them are financially stable. Tr. at 120.

22. Counsel to Rossington and Collins suggested that Collins may be liable personally for at least one criminal matter.

lins.[23] Accordingly, they are equally liable for the legal services rendered in connection therewith. The Court requests an affidavit setting forth the number of hours that were spent by plaintiff on this matter.

*Legal Services Rendered to Corporate Defendants*

■ With respect to the claim for the incorporation expenses of the Florida corporate defendants, the Court notes that it is not required to apply the laws of one state to all the issues raised in a lawsuit. *See Pan American World Airways, Inc. v. Boeing,* 500 F.Supp. 656, 659 (S.D.N.Y. 1980); *Oakley v. National Western Life Insurance Co.,* 294 F.Supp. 504, 506 (S.D. N.Y.1968). Although there is no conflict in the laws of New York and Florida on the liability of the corporation for its formation, the Court applies Florida law to this issue. The Florida General Corporation Act provides that a corporation may pay the expenses of its formation or reorganization. Fla.Stat.Ann. § 607.064 (West 1977); *see* N.Y.Bus.Corp.Law § 507 (McKinney 1963). While the members of the Band may have benefited by the creation of the corporate defendants, it is the corporate defendants who are liable for the incorporation expenses.

Furthermore, the corporate defendants are liable for the legal services rendered in association with the record contract for the Band; the Band's 1980 Tour; the subpublicity; the Rodney Mills matter and any subsequent services that are specifically alleged in its post-trial brief. If the subsequent judgment to be submitted by plaintiff is to include the amount recoverable from the corporate defendants as well as Rossington and Collins, then the Court requests a breakdown of hours spent on these matters.

## CONCLUSION

In accordance with the foregoing, plaintiff is directed to serve and file within fourteen (14) days of the date of this Opinion supplemental records and the allocation of the attorneys' fees between Collins and Rossington.

Submit Judgment forthwith.

SO ORDERED.