**KRAMER, LEVIN, NESSEN, KAMIN & FRANKEL, Plaintiff,**

v.

**Arnold Y. ARONOFF and Castle Bank and Trust Ltd., as Trustee for the JDL Trust, Defendants.**

**No. 85 Civ. 1647 (RLC).**

United States District Court, S.D. New York.

June 18, 1986.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiff; Stuart J. Baskin, Michael B. Reuben, of counsel.

Hertzberg, Jacob & Weingarten, Detroit, Mich., for defendants; Abraham Singer, Michael Treanor, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff pro se Kramer, Levin, Nessen, Kamin & Frankel ("Kramer Levin"), a Manhattan law firm, brings this diversity action[1] to recover $110,507.86 for legal services it allegedly rendered to Arnold Y. Aronoff ("Aronoff") and the JDL Trust (the "Trust"). This matter is now before the Court on plaintiff's motion for summary judgment, pursuant to Rule 56, F.R. Civ.P., on all of Kramer Levin's claims and on all of Aronoff's affirmative defenses and counterclaims. Plaintiff also moves to strike the answer and counterclaim filed by Aronoff's attorneys allegedly in the name of defendant Castle Bank and Trust Ltd. ("Castle Bank" or the "Trustee"), as Trustee for the Trust, and moves for a default judgment to be entered against the Trust. Lastly, plaintiff moves for sanctions, pursuant to Rule 11 and the court's equitable powers, against Aronoff and his attorneys for allegedly filing papers with this court solely to harass, delay and impose expense on plaintiff.

## FACTS

Defendant Aronoff, a real estate investor, had a trust created in the Cayman Islands for the benefit of his children and parents. *Aronoff Deposition* at 84–85, 337, 370. According to Aronoff's June-August 1985 deposition, the Trustee of the Trust was and is Castle Bank. *Id.* at 86–87. Aronoff acted as "advisor" to the Trust and was familiar with its activities and the activities of Castle Bank as Trustee. *Plaintiff's Exhibit* 5, ¶¶ 8, 9. Before paying any legal fees or disbursements to Kramer Levin from the Trust, Castle Bank

---

1. Plaintiff is a New York partnership with its principal place of business in New York City. Defendant Aronoff is a citizen and resident of Michigan and defendant Castle Bank and Trust Limited ("Castle Bank" or the "Trustee") is a bank organized and existing under the laws of the Cayman Islands. The amount in controversy exceeds the sum of $10,000 exclusive of interest and costs. Hence, the court has diversity jurisdiction over the controversy under 28 U.S.C. § 1332(a)(1).

always requested Aronoff's approval. *Id.* at ¶ 9.

After the Trust was created, Aronoff caused the Trust to acquire an option on approximately 12,500 acres of real estate (the "Caravelle property"), which the Trust later purchased for $5.7 million. The Trust then sold approximately 5500 acres of the property to Penn-Dixie Industries, Inc. ("Penn-Dixie"), a publicly traded company headquartered in New York, for approximately $5.9 million.[2] On November 15, 1976, the Securities and Exchange Commission ("SEC") filed suit against Aronoff, the Trust and others in the United States District Court for the District of Columbia, alleging that Aronoff, the Trust, Castle and Penn-Dixie had violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 by defrauding Penn-Dixie's shareholders in the Caravelle property transaction. *Plaintiff's Exhibit 9.*

Daniel Levitt, a partner at Kramer Levin, with substantial experience in both securities litigation and criminal law, *Levitt Deposition* at 8–10, represented Aronoff before the SEC on December 8, 1975, while Levitt was an attorney at Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"). When Levitt joined Kramer Levin on September 1, 1976, Kramer Levin took over the representation of Aronoff from Paul Weiss. *Aronoff Deposition* at 18–19.

During the period between December 1, 1976, and August 30, 1979, plaintiff acted as counsel or co-counsel to defendants in connection with an inquiry and civil litigation by the SEC, and in private lawsuits instituted by Penn-Dixie and certain of its shareholders. *Rule 3(g) Response* at ¶ 8. The interests of Aronoff and the Trust in these matters were substantially identical, and Kramer Levin's dual representation was undertaken at Aronoff's request to avoid duplicative legal expenses. *Aronoff Deposition* at 18–19; 68–72.

Initially, Kramer Levin sent its bills directly to Aronoff but later addressed its bills to the Trust with copies to Aronoff. All of Kramer Levin's bills expressly stated that they were for professional services rendered on behalf of Aronoff, and Aronoff regarded plaintiff's services as legal services performed for him. *Id.* at 73. Moreover, Levitt specifically informed the Trustee by letter that the bills sent to the Trust were for legal services performed for Aronoff, and the Trustee obtained specific authorization from Aronoff to pay those bills. *Plaintiff's Exhibits* 33, 37–39. Three payments were made without protest in January 1977, September 1977, and February or March 1979 by either Aronoff or the Trust.

The bills, based on plaintiff's hourly charges for professional services, and for disbursements advanced, were submitted on or about the following dates: April 11, 1977; July 1, 1977; August 25, 1977; September 19, 1977; February 28, 1978; September 15, 1978; December 21, 1978; and September 19, 1979. *Complaint,* Exhibits A–H. The final statement, dated September 19, 1979, showed a balance due of $110,507.86.

On May 21, 1979, Aronoff pled guilty to one count of mail fraud, *Plaintiff's Exhibit 4,* and was sentenced to two years' imprisonment, which was subsequently reduced to a year and a day. He commenced serving his sentence in October, 1979, and was released in June, 1980.

In January, 1980, the Trustee wrote to Aronoff regarding the need to raise cash because of "substantial fees" the Trust owed to Paul Weiss and Kramer Levin. *Plaintiff's Exhibit 57.* On March 29, 1982, Levitt wrote Aronoff requesting payment of Kramer Levin's final bill. *Plaintiff's Exhibit 58.* In reply, Aronoff—for the first time—disputed the propriety of the bill. *Plaintiff's Exhibit* at 59. On March 1, 1985, Kramer Levin commenced this action.

---

**2.** Penn-Dixie's president, Jerry Castle, was a long-time friend and business associate of Aronoff's. Castle's father had provided $30,000 needed to maintain the Trust's option on the Caravelle property in exchange for a 20% interest in the 7000 acres retained by the Trust. *Plaintiff's Exhibit* 2 at 23 *et seq.; Plaintiff's Exhibit* 3.

## DISCUSSION

In a diversity case, a federal district court applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York choice of law rules, this court must apply the law of the state with "the most substantial interest in the issue to be resolved." *Wheeler v. Standard Tool & Manufacturing Co.*, 359 F.Supp. 298, 301 (S.D.N.Y.1973) (Duffy, J.), *aff'd* 497 F.2d 897 (2d Cir.1974); *Haag v. Barnes*, 9 N.Y.2d 554, 559–60, 216 N.Y.S.2d 65, 68–69, 175 N.E.2d 441 (1961). Although Aronoff is a resident of Michigan and the Trust is organized under the laws of the Cayman Islands, where a New York law firm is seeking attorney fees for legal work and representation performed mostly in New York, and by attorneys who are duly admitted to practice in New York, New York has the paramount interest in the matter and the applicable law regarding the right to payment of attorney fees and the value of such services is that of New York. *Arrow, Edelstein & Gross v. Rosco Productions, Inc.*, 581 F.Supp. 520 (S.D.N.Y.1984) (Cannella, J.).

### I. *Summary Judgment Against Defendant Aronoff*

Under the doctrine of an "account stated," plaintiff asserts that it has established its right to payment for its legal services. An account stated is "an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other." *Chisholm-Ryder Co., Inc. v. Sommer & Sommer*, 70 A.D.2d 429, 431, 421 N.Y.S.2d 455, 457 (4th Dep't 1979). Under this doctrine, "where an account is made up and rendered, he who receives it is bound to examine the same, or procure some one to examine it for him; if he admits it to be correct, it becomes a stated account and is binding on both parties—the balance being the debt which may be sued for and recovered at law." *Lockwood v. Thorne*, 11 N.Y. 170, 174 (1854).

Because a party who receives an account is bound to examine the statement and make all necessary objections, an agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time, *Rosenman Colin Freund Lewis & Cohen v. Neuman*, 93 A.D.2d 745, 461 N.Y.S.2d 297, 298–99 (1st Dep't 1983), unless fraud, mistake, or other equitable considerations are shown. *Id.*

It is a well settled legal principle that an account stated may be established between an attorney and his client. *Rodkinson v. Haecker*, 248 N.Y. 480, 162 N.E. 493 (1928). Here it is uncontested that Kramer Levin provided legal services to Aronoff. *Rule 3(g) Response* at ¶¶ 8–10. Aronoff admitted that he and Levitt had "hundreds or maybe thousands of conversations on great matters to small." *Aronoff Deposition* at 206. In total, Kramer Levin appeared for Aronoff and the Trust in nine actions where they were original defendants and three others in which they were later added as defendants. *Plaintiff's Exhibits* 9–10.

Unrebutted documentary proof annexed to plaintiff's moving papers also establishes that Kramer Levin regularly billed Aronoff directly or, at Aronoff's request, billed the Trust with copies sent to Aronoff. *Plaintiff's Exhibits* 14–22. Furthermore, Aronoff admits that Kramer Levin mailed him bills for the legal services, *Rule 3(g) Response* at ¶¶ 12–13, and that the final bill mailed on September 19, 1979, showed a balance due and owing of $110,507.86. *Id.* at ¶ 16. Aronoff does not dispute receipt of the bills, stating merely that "it is unclear to Defendant whether he actually received all of the bills."[3] *Id.* at

---

**3.** During two separate depositions, occurring two months apart, Aronoff, when queried, never denied receiving all of Kramer Levin's bills, he merely answered, "I don't know," or "I don't

¶ 14. Even if this statement could be considered a denial of receipt of all of the bills, an unsupported denial, upon information and belief, is insufficient to raise any issue of fact so to defeat a motion for summary judgment on an account stated. *Belmet Products, Inc. v. Merit Enterprises, Inc.*, 37 Misc.2d 368, 370, 236 N.Y.S.2d 254 (Civ. Ct.1963).

■ An agreement to pay an indebtedness may also be implied if the debtor makes partial payment. The partial payment is considered acknowledgment of the validity of the account. *Parker Chapin Flattau & Klimpl v. Daelen Corp.*, 59 A.D.2d 375, 378, 399 N.Y.S.2d 222, 224, (1st Dep't 1977). Aronoff, or the Trust under his direction, made three separate payments of Kramer Levin's bills, two of them partial payments against an outstanding balance. Aronoff personally made the last of those two partial payments after Kramer Levin had sent him its eighth and next-to-last bill. New York courts have consistently held such partial payments to be acknowledgement of the correctness of the account. *Milstein v. Montefiore Club of Buffalo, Inc.*, 47 A.D.2d 805–06, 365 N.Y.S.2d 301, 303 (4th Dep't 1975) ("Respondent made payments over a period of 14 months without a word of complaint or any suggestion that there was anything wrong with appellants' services or the bills they submitted."). Because Aronoff has both acquiesced in the bills sent to him, and made partial payment against the outstanding balance, plaintiff has established its account stated claim.

■ As a first affirmative defense, Aronoff asserts, in part, that the complaint fails to state a claim for attorneys' fees on an account stated theory because Aronoff never expressly acknowledged the final statement of account relied upon by Kramer Levin or expressly indicated an intent to pay without objection. *Defendant's Memorandum of Law* at 18. Lack of an express objection to an account stated is insufficient to defeat a motion for summary judgment. In *Lockwood v. Thomas*, 11 N.Y. 170 (1854), the court stated "if, instead of an express admission of the correctness of the account, the party receiving it keeps the same by him and makes no objection within a reasonable time, his silence will be construed into an acquiescence in its justness." *Id.* at 174. Here where almost three years passed before Aronoff questioned the billing, such a period of silence—in which there was ample opportunity to object to the billing—amounts to an implied acquiescence to the stated account.[4]

■ Although the mere retention of an account for a reasonable amount of time without objection is said to prima facie establish assent to its correctness by the party receiving it, "this may be overborne by proof of circumstances tending to a contrary inference." *Spellman v. Muehlfeld*, 166 N.Y. 245, 248, 59 N.E. 817 (1901). Here, Aronoff has not made the necessary showing of fraud, mistake or other equitable considerations which make it improper to enforce the account stated. *See Rodkinson v. Haecker, supra*, 248 N.Y. at 489, 162 N.E. 493 (1928) (judgment for attorney on account stated where a detailed account had been submitted to client, client had made a payment on the account, and client did not plead fraud, mistake, or overreaching).

■ Kramer Levin could also recover the reasonable value of the services it pro-

recall" several times. *Aronoff Deposition* at 229, 238–40, 245–46, 263, 269, 286, 329. Certainly in the two month hiatus between his initial deposition and his second deposition, Aronoff had ample opportunity to ascertain whether he had received, retained, and thus accepted Kramer Levin's statement of account.

4. Defendant correctly cites *James Talcott, Inc. v. United States Telephone Co.*, 52 A.D.2d 197, 383 N.Y.S.2d 39 (1st Dep't 1976), for the proposition that summary judgment on an account stated is inappropriate where the debtor has disagreed as to the correct amount due. Distinguishable from the facts here, where Aronoff kept a three year silence, the alleged debtor in *Talcott* had voiced constant oral complaints to the party seeking to recover on an alleged account stated, and these complaints were often considered and acted upon to adjust the accounts between the parties.

vided in quantum meruit. An attorney, like any other provider of services, is entitled to recover in quantum meruit for the reasonable value of services performed and to recover interest on this amount from the date of the demand of payment. *Arrow, Edelstein & Gross v. Rosco Productions,* 581 F.Supp. 520 (S.D.N.Y.1984) (Cannella, J.). In *Sprafkin v. Pacific Industries, Inc.,* 30 A.D.2d 650, 291 N.Y.S.2d 174, 175 (1st Dep't 1968), the court affirmed a grant of summary judgment in an action by an attorney who sued in quantum meruit for legal services rendered to a client, where the client denied neither hiring the attorney nor the attorney's performing services, but merely denied knowledge of the extent of the attorney's services or their value.

The facts here present an even stronger case than *Sprafkin v. Pacific Industries, Inc.,* since Aronoff was informed by Kramer Levin what services were rendered and their value. Plaintiff has annexed a copy of each of the bills it sent to Aronoff or the Trust, *Plaintiff's Exhibits* 14–22, the time sheets from December 1, 1976, to November 21, 1979, *Plaintiff's Exhibit* 7, and its "Client Work in Progress Reports," dating from December 31, 1976 to December 31, 1979, *Plaintiff's Exhibit* 8. The time sheets identify the attorney, the particular matter worked on, and the hours billed. The computerized "Client Work in Progress Reports," listing xerox and special postage expenses, detail the disbursements made. The bills summarize the charges indicated on the time sheets and progress reports. These documents were made available to Aronoff months in advance of Levitt's deposition; however, defendant chose to mark none as an exhibit at Levitt's deposition, and Levitt was not questioned about a single time charge or disbursement. *Plaintiff's Memorandum of Law* at 22. Aronoff, a businessman, who dealt with several high powered law firms in various lawsuits, is presumed to be aware of the prevailing rates of the law firms he engaged. *Botein, Hays, Etc. v. Polymetrics International, Inc.,* 81 Misc.2d 398, 366 N.Y.S.2d 251 (Civ.Ct.1975). Throughout, Aronoff accepted Kramer Levin's charges without question as the fair and reasonable value of its services.

Aronoff admits that he was Kramer Levin's client, but argues—as part of his first affirmative defense—that a trial is required in order for Kramer Levin to recover attorneys' fees in quantum meruit, since a court must "consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, by whom they were performed, the professional standing of counsel and the results obtained." *Charles Weiner Corp. v. D. Jack Davis Corporation,* 113 Misc.2d 263, 265, 448 N.Y.S.2d 998, 1000 (1982). The bills, timesheets, and client reports that plaintiff annexed to its motion for summary judgment are sufficiently detailed to state a claim for attorneys' fees in quantum meruit. The fees sought are in accord with New York standards. Thus, there is no the need for a trial to determine the nature and value of legal services rendered.

Under NY CPLR § 5001, "interest shall be recovered upon a sum awarded because of a breach of a performance of a contract." This section applies both to an action for quantum meruit, *Arrow, Edelstein & Gross, P.C. v. Rosco Productions, Inc., supra,* 581 F.Supp. at 524, and an action on an account stated. *In re Bartlett's Estate,* 272 A.D. 1068, 1069, 74 N.Y.S.2d 861, 863 (2d Dep't 1947) (decision under Civil Pract. Act § 480, the predecessor to CPLR § 5001), *aff'd mem.,* 298 N.Y. 747, 83 N.E.2d 149 (1948). In either case, interest runs from the date of the demand for payment. *See Brent v. Keesler,* 32 A.D.2d 804, 805, 302 N.Y.S.2d 349, 351 (2d Dep't 1969). Kramer Levin demanded payment and stated a final account for $110,507.86, by a bill dated September 19, 1979. Kramer Levin is thus entitled to prejudgment interest from September 19, 1979, at the rate of 6% to June 25, 1981, and at the rate of 9% thereafter. *See* NY CPLR § 5004.

In a further attempt to defeat plaintiff's motion for summary judgment, Aronoff as-

serts four additional affirmative defenses and a counterclaim for a return of fees. These affirmative defenses and counterclaim fail to raise issues of fact for trial.

 Aronoff asserts that this action is barred by the applicable statute of limitations. Under NY CPLR § 213(2), an action must be commenced within six years after final services have been rendered if it is "an action upon a contractual obligation of liability express or implied." Both account stated and quantum meruit are claims based on a contract implied in law, and both are governed by NY CPLR § 213(2). *Donahue-Halverson, Inc. v. Wissing Construction & Building Services Corp.*, 95 A.D.2d 953, 954, 464 N.Y.S.2d 268, 269 (3d Dep't 1983). The statute of limitations begins to run on an account stated on the day of the statement. It begins to run on a claim for quantum meruit when the final service has been performed. *In Re Williams Estate*, 179 Misc. 805, 39 N.Y.S.2d 741 (Surr.Ct.1942). Here, it is undisputed that Kramer Levin's final bill was sent on September 19, 1979, and that it reflected legal services performed through August, 1979. Thus, the commencement of this action on March 1, 1985, was well within the six-year limitations period for both causes of action.

 Defendant maintains, however, that plaintiff may have breached its fiduciary duty to defendant, thereby forfeiting its right to receive attorneys' fees, at the time Aronoff testified before a Miami grand jury in 1977, and, therefore, the statute of limitations may have begun to run as early as 1977. This defense is factually baseless. First, Aronoff admits that Kramer Levin continued to perform legal services for him at least through August, 1979. *Rule 3(g) Response* at ¶ 8. Second, Aronoff made a payment of $75,000 on the outstanding balance of the Kramer Levin legal fees in February or March 1979. This payment in 1979 is inconsistent with defendant's present assertion that plaintiff breached its fiduciary duty in 1977.

 Defendant next relies on the statute of frauds as a defense to the claim for quantum meruit or account stated. This defense has no factual or legal support. A written statement of account rendered to the defendant is sufficient to preclude any defense to an account stated based on the statute of frauds. *Milstein v. Montefiore Club of Buffalo, Inc., supra*, 47 A.D.2d at 805–06, 365 N.Y.S.2d at 302–03 (court granted summary judgment on an account stated even though the defendant raised the statute of frauds). "A claim in quantum meruit does not depend upon a contract's compliance with the requirements of the statute of frauds." *Marcraft Recreation Corp. v. Francis Devlin Co.*, 506 F.Supp. 1081, 1086 (S.D.N.Y.1981) (Duffy, J.); *accord, Shapiro v. Dictaphone Corporation*, 66 A.D.2d 882, 884, 411 N.Y.S.2d 669, 672 (2d Dep't 1978).

 Next, Aronoff complains of the inadequacy of Kramer Levin's legal services. No challenge was made to either Kramer Levin's billing or quality of legal services until almost three years after the date of the final bill, and by that time, the SEC and shareholder actions that Kramer Levin had worked on, had long been settled. In *Milstein v. Montefiore Club of Buffalo*, 47 A.D.2d 805, 365 N.Y.S.2d 301 (4th Dep't 1975), an architectural firm sued to recover the balance due for services it had rendered over a two year period. The defendant made payments over a period of 14 months without any complaint or any suggestion that there was anything wrong with services or the bills submitted. In dismissing the defendant's counterclaim, the court noted the absence of a single criticism made to plaintiff during the entire period the architectural firm performed its services. *Id.* at 303.

In *Rosenman Colin Freund Lewis & Cohen v. Neuman, supra*, 93 A.D.2d at 746, 461 N.Y.S.2d at 299, the court held that "belated objections" to an account stated are "insufficient to raise genuine factual issues warranting denial of summary judgment" unless fraud, mistake, or other equitable considerations are shown. Aronoff has not raised any issue of fraud,

mistake or other equitable consideration to explain why he waited until 1982 to question the services or billing. Although serving a jail sentence from October, 1979, through June, 1980, Aronoff still had the legal responsibility to examine or have someone else examine the bills submitted by Kramer Levin; therefore, Aronoff's jail sentence does not excuse him from failing to object to the account stated.

At his deposition, Aronoff listed three ways in which he believed his representation by Kramer Levin was inadequate. First, Aronoff alleges that his attorney failed to get him immunity for his testimony before a Miami grand jury in 1977. Since Aronoff was never indicted by that grand jury, his failure to receive immunity is irrelevant. Furthermore, the Miami grand jury was investigating unlawful tax schemes using offshore trusts, and according to Levitt's uncontradicted testimony, Miami prosecutors were unwilling to grant immunity unless a witness possessed information concerning the creation by tax lawyers of unlawful tax schemes using offshore trusts. Aronoff had no such testimony to give. *Levitt Deposition* at 187–90.

A second claim of inadequate representation is Levitt's purported waiver of Aronoff's attorney/client privilege with Edwin Ziegelman, the attorney who set up the Trust in the Cayman Islands. This waiver issue arose in *United States v. Aronoff*, 466 F.Supp. 855 (S.D.N.Y.1979) (Cannella, J.). On October 5, 1978, Levitt and two other attorneys representing Aronoff met with the U.S. Attorney hoping to forestall Aronoff's indictment by having the government talk to Ziegelman, a principal in the Caravelle property transaction, whose testimony it was thought would exculpate Aronoff. When the government insisted that the indictment would be forestalled only if Aronoff waived his attorney/client privilege as to Ziegelman, Aronoff declined to do so. The government later argued that Levitt's presentation to the prosecutors itself served as a blanket waiver. *Id.* at 860–61.

Judge Cannella found that Levitt's statements at a preindictment meeting with the United States Attorney effected a partial waiver of Aronoff's privilege with respect to certain communications he had with Ziegelman regarding the Caravelle property transaction. Moreover, the Court explained that Levitt could have avoided the waiver of Aronoff's attorney-client privilege during these preindictment negotiations, by agreeing in advance with the government's attorneys that any disclosures would be "without prejudice." *Id.* at 861. However, Judge Cannella disagreed with the government's view as to the extent of a waiver effected by Levitt's statements and specifically authorized the government to ask Ziegelman only "(1) whether or not members of his firm discussed with Aronoff questions concerning their failure to disclose various aspects of the [Caravelle] property transaction to Penn-Dixie and (2) the substance of any advice given by any member of Ziegelman's firm, to Aronoff on his duty to disclose [the $30,000 option side-agreement with Herbert Kesselman]" *United States v. Aronoff, supra,* 466 F.Supp. at 863 (S.D.N.Y.1979) (Cannella, J.).

Levitt's actions clearly resulted in a partial denial of Aronoff's attorney/client privilege with regard to Ziegelman. However, the near coincidence of Aronoff's second payment of $75,000 to Kramer Levin in February or March 1979 with Judge Cannella's March ruling on the waiver of attorney/client privilege issue, indicates that Aronoff did not at that time dispute Kramer Levin's right to payment for its services. He may have been disappointed with Judge Cannella's ruling on the effect of Levitt's preindictment discussions with the United States Attorney, but the claim of inadequate legal services in that regard is surely an afterthought.

Aronoff lastly asserts that certain SEC criticisms and investigations of Levitt possibly hurt Aronoff, and that he would have possibly sought different representation had he been aware of these criticisms. *Aronoff Deposition* at 8–9. Levitt testified that he informed Aronoff orally of the

SEC's inquiry, *Levitt Deposition* at 320–322, and submitted evidence that he wrote Aronoff several letters which refer to that inquiry. *Plaintiff's Exhibits* 54, 56. Though Aronoff does not recall either having the conversation or receiving the letters, *Aronoff Deposition* at 289–93, 323–24, this is irrelevant. The SEC incident regarding "criticism" of Levitt occurred in July, 1979,—more than two months after Aronoff pled guilty to mail fraud and settled the SEC suit. At that time, the SEC staff informed Levitt that it was considering recommending proceedings against him under Rule 2(e) of the SEC's Rules of Practice, because the staff felt that Levitt knew that Aronoff had lied in his SEC testimony in December, 1975, when he failed to disclose certain information in the Penn-Dixie land transaction. However, after a complete inquiry, the SEC declined to institute any proceeding.

■■■ Aronoff finally argues that the action is barred by the doctrine of accord and satisfaction. An accord and satisfaction is "a form of contract whereby one party agrees to give or perform, and the other party agrees to accept, what is offered in settlement of an outstanding claim. When this contract, or accord, is executed, the claim is satisfied." *Pepper's Steel & Alloys v. Lissner Minerals & Metals, Inc.*, 494 F.Supp. 487, 496 (S.D.N.Y. 1979) (Leval, J.). Because it is an independent contract, an accord and satisfaction requires a "meeting of the minds." *Id.* at 497.

■■ Aronoff argues that he had reason to believe that there was an accord and satisfaction since from 1982, when Levitt wrote Aronoff requesting payment of Kramer Levin's final bill, until 1985, when Kramer Levin commenced this suit, there was no communication from Kramer Levin regarding legal fees owed. A three year period of silence, following repeated bills and letters requesting attorneys fees, does not amount to an accord and satisfaction. *See Rosenman Colin Freund Lewis & Cohen v. Neuman*, 93 A.D.2d 745, 461 N.Y. S.2d 297 (1st Dep't 1983) (summary judgment granted on theory of accounts where defendant's written acknowledgement of the debts dated May 18, 1977, but the suit was not commenced until January, 1981); *In re Bartlett's Estate*, 272 A.D. 1068, 74 N.Y.S.2d 861 (2d Dep't 1947) (where debtor died on December 9, 1943, and creditor had rendered an account in December, 1937, for dental services worth $93 rendered during 1937, the six year statute of limitations, not having expired at time of debtor's death, did not bar recovery, on theory of account stated for that item).

In sum, defendant's affirmative defenses are without merit and do not bar summary judgment.

■■■ On the theory that Kramer Levin either abandoned its legal representation of Aronoff or failed to withdraw as legal counsel to Aronoff when an alleged conflict of interest arose, Aronoff counterclaims for the return of certain fees paid to Kramer Levin. *Aronoff's Amended Answer* at ¶ 7. This counterclaim is nothing more than a restatement of defendant's failed affirmative defense alleging inadequate representation by Kramer Levin. Under this theory, Levitt allegedly did not inform Aronoff about the possibility that Aronoff had perjured himself when testifying before the SEC and that this possible perjury might become apparent when Aronoff testified before the Miami grand jury. Furthermore, Levitt allegedly did not inform Aronoff that he himself was under investigation by the SEC for his role as Aronoff's attorney. For the reasons set out above in rejecting defendant's inadequate representation defense, the court views the counterclaim as factually baseless, and, accordingly, denies it. Kramer Levin did not abandon its legal representation of Aronoff or improperly continue in its representation of Aronoff.

## II. *Default Judgment Against Defendant Castle Bank*

As to defendant Castle Bank, plaintiff moves pursuant to F.R.Civ.P. 37(d) to strike the answer and counterclaim filed in

the name of Castle Bank as a sham pleading, and moves for entry of default judgment, pursuant to Rules 37(b)(2)(C)[5] and 55, F.R.Civ.P., against the Trust on the grounds that the Trust has failed to plead, appear for deposition or produce documents. Rule 55 requires that a party seeking default judgment must provide by affidavit or otherwise that the party against whom default judgment is sought has failed to plead or otherwise defend the cause of action as required by the Federal Rules of Civil Procedure.

 Plaintiff alleges that the answer and amended answer filed on behalf of the Trust were filed by Aronoff's attorneys, Abraham Singer and Michael Treanor, who have since acknowledged that they do not represent the Trust, but represent only its beneficiaries, *Singer Affidavit* at 2, and filed these papers on behalf of the Trust "upon the instruction of the beneficiaries of the Trust." *Id.* at ¶ 2. The court may grant a motion to strike out a plea if the plea "has been filed irregularly, is not sworn to, if that is required, or wants signature of counsel, or any defect of that character". *Bates v. Clark,* 95 U.S. 204, 206, 5 Otto 204, 24 L.Ed. 471 (1877). Moreover, this court has ruled that a pleading should be stricken "when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis ...." *Murchison v. Kirby,* 27 F.R.D. 14 (S.D.N.Y.1961) (Weinfeld, J.). The Trust beneficiaries are not parties to this lawsuit; hence, they could not authorize Singer and Treanor to answer for the Trust. Thus, any pleadings filed on behalf of the Trust are stricken.

 Default judgment is granted against the Trust pursuant to Rule 55, F.R. Civ.P., for failing to plead or otherwise defend against this suit.[6] Castle Bank was and is the undisputed trustee of the Trust. *See Aronoff Deposition* at 86–87. The Trust was served by the Clerk of this Court pursuant to F.R.Civ.P. 4(i)(1)(D) by registered mail, return receipt requested, addressed to the business address of the Trustee, Castle Bank, *Reuben Affidavit, Exhibits* A, B: the same address that was used by plaintiff to correspond with the Trust throughout its representation of the Trust and Aronoff. *Plaintiff's Exhibits* 33, 43, 46, 47. The envelope and its contents sent by registered mail, as provided by the Rule, were received by the defendant as evidenced by the return receipt. This is sufficient to comply with Rule 4(i)(1)(D), F.R.Civ.P. *See Hunt v. Mobil Oil Corporation,* 410 F.Supp. 4, 9 (S.D.N.Y.1975) (Weinfeld, J.).

### III. *Motion for Rule 11 Sanctions*

Plaintiff moves for sanctions against Aronoff and his counsel pursuant to Rule 11, F.R.Civ.P., on the ground that the affirmative defenses and the counterclaim are frivolous and were imposed merely to delay Kramer Levin's recovery of its attorney fees. Rule 11 requires that an attorney signing the pleadings, motions or other papers certify that to the best of his knowledge, after reasonable inquiry, the papers are "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." The Second Circuit in

---

**5.** Rule 37(d), F.R.Civ.P., provides that when "a party or an officer, director, or managing agent of a party ... fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories," the court may "render[ ] a judgment by default against the disobedient party." F.R.Civ.P. 37(b)(2)(C).

**6.** Plaintiff also seeks default judgment against Castle Bank, pursuant to Rule 37, F.R.Civ.P., on the ground that the Trust has failed to appear for a properly noticed deposition or to respond to a proper document request, such notice being made to the purported Trust attorneys Singer and Treanor. *Reuben Affidavit* at ¶ 6. Plaintiff cannot have it both ways—either Singer and Treanor are the Trust's attorneys or they are not. This court has found that Singer and Treanor were unauthorized to answer for the Trust; consequently, it follows that they were unauthorized to receive notice of deposition on behalf of the Trust. Hence, default judgment cannot be entered against the Trust on the basis that the Trust has failed to appear for a properly noticed deposition pursuant to Rule 37, F.R.Civ.P.

*Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985), has read Rule 11 as meaning that "subjective good faith no longer provides the safe harbor it once did."

In view of Aronoff's 3(g) counterstatement and deposition admitting that Kramer Levin rendered legal services to him from September, 1976, through August, 1979, and the exhibits filed in this case detailing Kramer Levin's lengthy representation of Aronoff, the court concludes that defendant and his attorney have acted in bad faith in opposing plaintiff's claim for payment of legal services by alleging frivolous affirmative defenses and an equally meritless counterclaim. Furthermore, Aronoff's counsel twice filed answers for the defendant Trustee which it now admits it never represented. Such an unauthorized pleading led plaintiff to spend time and resources to reply to the "Trust's" answer and amended answer, and also to serve notices of deposition and production of documents on the Trust by serving Aronoff's attorneys, who could receive no such notices for a defendant they did not represent. These actions fall short of an attorney's affirmative duty under Rule 11 to conduct a reasonable inquiry with repsect to the facts and the law of every paper filed in court. *Wells v. Oppenheimer & Co., Inc.,* 101 F.R.D. 358 (S.D.N.Y.1984) (Knapp, J.).

Under these circumstances, Rule 11 sanctions are appropriate against both Aronoff and his attorneys. The federal courts have always had the power to tax counsel fees against a party who litigates in bad faith, vexatiously, wantonly or for oppressive reasons. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). As this court stated recently, "fee shifting becomes appropriate to compensate a litigant for legal fees he should never have been forced to incur. The purpose in such instance is one of deterrence." *Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.,* 638 F.Supp. 713 (S.D.N.Y.1986) (Carter, J.); ac-

cord, *Nemeroff v. Abelson,* 620 F.2d 339 (2d Cir.1980). Accordingly, Kramer Levin is to submit to the court in due course a sworn, itemized statement with supporting data regarding the attorneys' fees it incurred in prosecuting this case. Defendant may file papers in opposition.

CONCLUSION

In sum, plaintiff's motion for summary judgment against defendant Aronoff is granted, and Kramer Levin is entitled to recover its stated final account of $110,-507.86 plus 6% prejudgment interest from September 19, 1979, until June 25, 1981, and 9% prejudgment interest thereafter. Kramer Levin is granted default judgment against the defendant Trust in the same amount. Plaintiff is also entitled to recover attorneys' fees for prosecuting the instant action, pursuant to Rule 11, F.R. Civ.P., against defendant Aronoff and his attorneys. Plaintiff is to recover its costs.

IT IS SO ORDERED.