**UNION STATE BANK, Plaintiff,**

v.

A. Vernon WEAVER, Administrator, Small Business Administration, and Small Business Administration, Defendants.

No. 79 Civ. 0440.

United States District Court,
S. D. New York.

March 26, 1981.

---

14. Fort's attorney agreed with this conclusion at the hearing.

Fury & Kennedy, Pearl River, N. Y., for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; William J. Brennan, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This litigation arises out of a decision by the Small Business Administration ("SBA") not to honor a guaranty on a $350,000 loan extended by the Union State Bank (the "Bank") to the Stahlmark Furniture Co., Inc. ("Stahlmark"). In its complaint, the

Bank advances several legal and equitable theories in support of its contention that the SBA wrongfully repudiated its guaranty of the loan in question. Discovery has now been completed, and the SBA has moved for summary judgment pursuant to Fed.R.Civ.P. 56.

The facts can be briefly summarized as follows. On December 8, 1975, the Bank closed on a $200,000 SBA guaranteed loan to Stahlmark ("Loan I"). Under the terms of a 1973 agreement between the Bank and the SBA (the "1973 Blanket Agreement"), the Bank was obligated to pay a 1% guaranty fee for each loan backed by the SBA (the "guaranty fee"). The agreement also provided that, for loans in excess of $100,000, the guaranty fee could be paid in two installments; the first installment was due within 5 days of the loan closing, and the second installment was to be paid on the one year anniversary of the loan closing. *See* Complaint Exhibit A. Consistent with these requirements, on December 2, 1975, the Bank paid $1,000.00 toward the $1,500.00 guarantee fee due on Stahlmark Loan I; the remaining $500.00 of that fee was due on December 8, 1976, the first anniversary of the loan closing.[1]

In July of 1976, Stahlmark sought to refinance its first loan and to borrow a total of $350,000.00. On October 13, 1976 the SBA agreed to guarantee 75% of a $350,000 loan to Stahlmark ("Loan II") and expressly stated that the loan was subject to the terms of the 1973 Blanket Agreement. Shortly thereafter, on November 18, 1976, the Bank advanced $300,000.00 to Stahlmark; this money was used, in part, to satisfy fully the outstanding indebtedness on Loan I.[2] It is undisputed that, within five days of the closing of Loan II, the SBA was entitled to be paid either $2,625.00, which would have been payment in full of the guaranty fee, or $1,312.50, which represents one-half of the guaranty fee due un-

---

1. The SBA agreed to guarantee 75% of the $200,000.00 loan or $150,000.00; the guarantee fee is 1% of the latter amount or $1,500.00.

2. The remaining $50,000.00 authorized by the SBA on Loan II was advanced to Stahlmark in March, 1975. *See* text *infra* p. 7.

der the two-installment payment plan.[3] No guaranty fee was paid at the time of the closing of Loan II.

Notwithstanding the fact that Loan I had been satisfied out of the proceeds of Loan II, the SBA, apparently through inadvertence, sent the Bank an invoice bearing the number of the Stahlmark loan and requesting payment of the outstanding balance on the Loan I guaranty fee, i. e., $500.00, by December 8, 1976, the first anniversary of the closing on Loan I. Although the Bank did *not* forward the $500.00 to the SBA on December 8, 1975, on February 22, 1976, the SBA refunded $862.00 to the Bank, which represented the pro rata rebate of the guaranty fee on Loan I. The Bank did send a $500.00 check to the SBA on May 9, 1976.[4] Finally, in June 1977, Stahlmark defaulted on Loan II, and the Bank attempted to have the SBA honor its guaranty. By a letter dated August 9, 1976, the SBA terminated its commitment to guaranty Loan II on the ground that the Bank had failed to pay the guaranty fee. The Bank obtained administrative review by the Comptroller General of the United States who upheld the SBA's decision. This lawsuit was commenced thereafter.

 In opposing the Government's motion for summary judgment, the Bank advances the following factual issues, which, in its view, preclude summary judgment: (1) whether the $500.00 check dated May 9, 1976 was payment of the guaranty fee on Loan I or Loan II; (2) whether the SBA should be estopped from terminating its loan guaranty commitment because of its prior course of conduct of honoring loan commitments for which a guaranty fee had not been paid; (3) whether the Bank acted under duress in advancing the remaining $50,000.00 of Loan II. Plaintiff's Statement Pursuant to Rule 9(g) of the Local Rules ¶¶ 1, 2, 4. It should be noted at the outset that in assessing the merits of the Government's motion for summary judgment, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975). Of course, the party opposing summary judgment " 'may not rest upon mere conclusory allegations or denials' " but must come forward with "some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (citations omitted.)

The Bank first argues that the 1973 blanket agreement with the SBA did not make payment of a guaranty fee a condition precedent to the SBA's liability, but merely changed the payment schedule so as to permit two annual installments. Unlike the 1970 and 1972 blanket agreements governing all SBA loans made in those years, however, the 1973 blanket agreement included the following provision:

2. *Approval of Guaranty.* SBA shall either authorize the guaranty or decline it, by written notice to the Lender. Any change in the terms or conditions stated in the loan authorization shall be subject to prior written approval by SBA. *An approved loan will not be covered by this agreement until Lender shall have paid the guaranty fee for said loan as provided in paragraph 5 of this agreement.*

Complaint, Exhibit A. (emphasis added.)[5] Courts have uniformly interpreted the "clear and unambiguous" language of paragraph 2 as establishing payment of a guaranty fee as a condition precedent to SBA liability. *Union National Bank of Chicago v. Weaver*, 604 F.2d 543 (7th Cir. 1979); *European American Bank & Trust Co. v. Weaver*, 79 Civ. 0397 (S.D.N.Y., July 23,

---

3. The SBA agreed to guarantee 75% of the $350,000.00 loan or $262,500.00; the guarantee fee is 1% of the latter amount or $2,625.00.

4. There is some dispute as to whether this check was intended as payment of the guaranty fee on Loan I or Loan II. *See infra.*

5. Paragraph 5 of the Agreement provides for the payment of the guaranty fee within five days, or for the payment of two installments on loans in excess of $100,000.00.

1980.) *See also* Opinion No. B–181432 of the Comptroller General dated March 12, 1975.

In *Union National Bank v. Weaver, supra,* the Seventh Circuit rejected the appellant-bank's argument that the payment of a guaranty fee was not a condition precedent to SBA liability. The court explained:

the central purpose of the guaranty fee is to cover administrative expenses and probable losses in connection with the loan guaranty program as a whole. We also agree that this purpose can be fully realized only if the guaranty fee is paid before the loan goes into default or before the lender has reason to believe that a default is imminent. If it were otherwise, a lender could receive the full benefit of the loan guaranty without any payment to the government for bearing the risk of loss until the need for the guaranty became evident; and, in all probability, the SBA would receive the guaranty fee payments only in those cases where the loan was in default or the prospect of default was likely. Accordingly, it is clear that the 5-day requirement of Paragraph 5 is designed to insure that payment of the guaranty fee will be made before the loan goes into default or the lender has reason to believe that default is imminent.

604 F.2d at 545. (citations omitted.) *Accord: European American Bank & Trust Co. v. Weaver, supra.* In affirming the decision of the district court granting summary judgment to the SBA, the court noted that the SBA had "the authority to waive the 5-day requirement as a condition precedent [only] *if the payment is made prior to default or the likelihood of default".* *Id.* (emphasis in original.) *See Bausch & Lomb Optical Company v. United States,* 78 Ct.Cl. 584, *cert. denied,* 292 U.S. 645, 54 S.Ct. 779, 78 L.Ed. 1496 (1934). Because the payment of guaranty fees in that case occurred after default on the underlying loan, the court concluded that the SBA was not obligated to purchase the loan from the Bank.

Here, the Agreement between the Bank and the SBA "clearly and unequivocally" stated that the payment of a guaranty fee is a condition precedent to enforcement of the SBA's obligation. *See European American Bank & Trust Co. v. Weaver, supra,* slip. op. at 3–4. I conclude that, as a matter of law, the payment of the fee on Stahlmark Loan II was a condition precedent to SBA's duty to purchase the loan.

The Bank argues that summary judgment is unavailable because factual issues exist on the question of whether the guaranty was paid on Stahlmark Loan II. In this connection, the Bank argues that, in effect, the first installment was "paid" by the $862.00 rebate it received on Loan I plus the $500.00 check it sent on May 9, 1975—a total of $1,362.00. Plaintiff's Statement Pursuant to 3(g). The undisputed facts demonstrate, however, that at no time prior to the June 1977 default by Stahlmark did the Bank pay the requisite $1,312.50 first installment on the guaranty fee. Assuming there is a serious question as to whether the $500.00 check sent on May 9, 1977 to the SBA by the Bank was intended as payment of the guaranty fee for Loan I or Loan II, this factual dispute does not preclude summary judgment. Assuming *arguendo* that the May 9, 1977 payment was to be credited to the guaranty fee on Loan II and that the SBA was required to apply the rebate on Loan I to the guaranty fee on Loan II,[6] the Bank concedes that it received the $862.00 *pro rata* refund on Loan I sometime in March 1977. It is quite clear that the SBA had not received the entire $1,312.50 guaranty fee at any time prior to the default on Loan II. At best, the Bank had paid $500.00 of the guaranty fee, which is, as a practical matter, far short of the amount required to bind the SBA.

In the alternative, the Bank contends that the Bank should be estopped from terminating its guaranty because of its prior course of conduct. Specifically, the Bank

---

**6.** John Patierno, the Bank officer responsible for monitoring the payment of SBA guaranty fees, testified at his deposition that the May 9, 1977 check may have been "on the first loan," but he indicated that he was "not sure."

points to three instances in which a guaranty fee was alleged to have been accepted by the SBA after default. Although "estoppel may be invoked against the government where there is 'noncompliance with an affirmatively required procedure ...,'" or there is "affirmative misconduct" by a government official, *Hansen v. Harris*, 619 F.2d 942, 952–3 (2d Cir. 1980) (Friendly, J., dissenting), this case does not present facts warranting such relief. Of the three loans adverted to by the Bank, two of them, the Close-O-Matic and Reca Construction loans, were governed by the provisions of the 1970 and 1972 SBA agreements which did not contain the condition precedent at issue in this case. The third loan, the Tambrook Dude Farm loan, utterly fails to support the Bank's contentions. In that instance, the SBA honored its guaranty commitment where the Bank had made a timely payment of the first installment on the guaranty fee and the loan went into default shortly thereafter. The SBA permitted the Bank to pay the second installment of the guaranty fee and honored its obligation to purchase the defaulted loan. Had the Bank paid the first installment on Stahlmark Loan II, which it did not, the Tambrook Dude Farm loan might provide some substance to its "course of conduct" argument.

■ Finally, it is the Bank's view that a triable issue of fact exists as to whether the $50,000.00 originally withheld by the Bank on Loan II was released because of "duress" by the SBA. According to the Bank, because of such "wrongful" conduct, the SBA should not be allowed to deny liability on the loan guaranty. In order to establish a defense of economic duress, the Bank must demonstrate that an agreement was obtained (1) "by means of a wrongful threat precluding the exercise of free will;" (2) "under the press of financial circumstances;" (3) where "circumstances permitted no oth-

er alternative." *Business Incentives Co., Inc. v. Sony Corp. of America*, 397 F.Supp. 63, 69 (S.D.N.Y.1975). *Accord: First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632–33 (2d Cir. 1972); *Transmarine Seaways Corp. v. Marc Rich*, 480 F.Supp. 352 (S.D.N.Y.1979). The uncontested facts concerning the Bank's duress defense are found in the deposition testimony of Ronald Patierno, the Bank officer who met with the SBA official in charge of the Stahlmark loan.[7] That testimony, which is set forth below, reveals that the officials of the SBA did not cause the Bank to act under duress:

Q Did he say he would take any steps if you did not advance the $50,000?

A I don't recall.

Q Did he say it would jeopardize any future business between Union State Bank and SBA?

A Not that I recall.

Q Did he say SBA would not honor the guarantee on the Stahlmark second loan if you did not advance the $50,000?

A Not that I recall.

Q Did he say SBA or he would take any steps against Union State Bank if the $50,000 were not advanced?

A Not that I recall.

Q Did you make a memorandum of the meeting?

A I don't recall.

Q Did Mr. McGuiness make any threats during the meeting?

A Not that I recall.

Q Did he seem abrasive or rude?

A No.

Q Did you have an opinion at that time as to what SBA would do if the additional $50,000 were not advanced?

A No, I didn't.

\*　\*　\*　\*　\*　\*

---

7. The Bank also proffered the affidavits of three members of the Bank's Board of Directors, who state that they were told by Patierno that the Bank had no choice other than to advance the additional $50,000.00. As none of these individuals were present at the meeting between Patierno and McGuiness, their statements are pure hearsay which are "not entitled to consideration" in opposition to summary judgment. *Price v. Worldvision Enterprises, Inc.*, 455 F.Supp. 252, 266 n.25 (S.D.N.Y. 1978); *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 97 (2d Cir. 1970).

Q Did you feel that Union Bank was being forced to advance the $50,000 by SBA?

A Yes.

Q How so?

A By the meeting that we were sort of told that we were obligated.

Q What did he specifically say?

A I can't tell you specifically.

Q He didn't indicate he would take any steps if you did not advance it?

A No.

Q He didn't threaten to reneg on the guarantee?

A Not that I recall.

Patierno Deposition at 86–8.

In a telephone meeting of the Bank's Executive Committee, Patierno conveyed to the Committee, the substance of his conversation with the SBA. The Committee, which is composed of experienced businessmen, bankers and the general counsel of the Bank, voted to advance the $50,000.00 on Loan II. As the Second Circuit observed in *Neumen v. Pike*, 591 F.2d 191 (2d Cir. 1979), the defense of economic duress is unavailable where, as here, "experienced and successful business[men] . . . [are] advised at all times by able counsel and . . . [have] adequate legal remedies available to [them]. . . ." *Id.* at 193–194. On the undisputed evidence before me, it is clear that the Bank simply elected to advance the remaining monies, rather than engage in a legal dispute over the Bank's right to withhold funds under an SBA guaranteed loan.

I conclude that the SBA did not wrongfully terminate its commitment to guarantee Stahlmark Loan II. Accordingly, the Government's motion for summary judgment is granted.

*So Ordered.*