Werner **LINSSEN**, doing business as Galerie Linssen, Plaintiff,

v.

Jacob **WEINTRAUB**, doing business as Weintraub Gallery, Defendant.

Jacob **WEINTRAUB**, doing business as Weintraub Gallery, Third–Party Plaintiff,

v.

Bo **FRANZEN**, doing business as Galleri Zero, Third–Party Defendant.

No. 88 Civ. 4499 (CHT).

United States District Court, S.D. New York.

March 4, 1991.

Rosenman & Colin, New York City (Gilbert Edelson, of counsel), for plaintiff.

Thomas R. Levy, New York City, for defendant.

## OPINION

TENNEY, District Judge.

Plaintiff, Werner Linssen d/b/a Galerie Linssen ("Linssen"), brings this action against defendant, Jacob Weintraub d/b/a Weintraub Gallery ("Weintraub"), to recover $81,383 in lost profits allegedly caused by Weintraub's breach of an oral agreement to purchase four sculptures by the artist Joan Miro. In the alternative, Linssen seeks to recover $52,000 in lost profits due to Weintraub's breach of a "guarantee" clause of a written agreement. Weintraub argues that no enforceable oral agreement existed concerning his purchase

of the four sculptures. As for Linssen's alternative claim, Weintraub concedes liability in the amount of $52,000, but claims that Linssen failed to mitigate his damages by the amount of $36,149. Thus, Weintraub argues that judgment should be entered against him, but only in the amount of $15,581. Furthermore, Weintraub, as third-party plaintiff, seeks a judgment against third-party defendant, Bo Franzen d/b/a Galleri Zero ("Franzen"), for $80,600 in lost profits due to Franzen's breach of contract plus any amount for which Weintraub is held liable to Linssen. For the reasons set forth below, the court finds that Weintraub is liable to Linssen for $52,000—Linssen's lost profit on his alternative cause of action. Moreover, the court finds that Franzen is liable to Weintraub for $132,600—Weintraub's $80,600 lost profit on his breach of contract claim plus Weintraub's $52,000 liability to Linssen. The following, including those additional facts referred to in the Discussion, constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Linssen is a citizen of Germany and a resident of Cologne where he operates an art gallery known as Galerie Linssen. PTO ¶ 1.[1]

2. Weintraub is a citizen of the United States and a resident of New York City where he operates an art gallery known as the Weintraub Gallery. PTO ¶ 2.

3. Franzen is a citizen of Sweden and a resident of Stockholm where he operates an art gallery known as Galleri Zero. PTO ¶ 3.

4. Franzen, who was served with a copy of the Third–Party Complaint, neither answered nor appeared in this action.

5. On September 19, 1987, at the Weintraub Gallery, Linssen and Weintraub entered into a written agreement ("the agreement"). The agreement was dictated and prepared by Weintraub. T. 70. Under the agreement, Linssen consigned seventeen works by Joan Miro for exhibition and sale at the Weintraub Gallery from October 6 through November 7, 1987 ("the exhibition"). As an inducement for Linssen to enter into the agreement, Weintraub guaranteed that he would purchase at least $200,000 worth of the consigned works ("the guarantee clause"). The price to Weintraub for such works would be Linssen's list price minus 15%. Jt.Exh. 1; T. 86.

6. Prior to the opening of the exhibition, Linssen sent Weintraub a price list. The list showed Linssen's asking price for each consigned work, and the agreed price to be remitted to Linssen upon its sale (the asking price less 15%). The prices were shown in West German deutschmarks. PTO ¶ 5; Jt.Exh. 2, 8.[2]

7. The works consigned by Linssen to Weintraub, with one exception not relevant to this proceeding, had themselves been consigned to Linssen by the Galerie Adrian Maeght ("Maeght"), an art gallery in Paris. The consignment from Linssen to Weintraub was approved by Maeght. Linssen had agreed to remit to Maeght a certain amount in French francs for each work sold. PTO ¶ 6; Jt.Exh. 3, 8.

8. Linssen shipped the seventeen Miro works to Weintraub. PTO ¶ 7.

9. As agreed upon, the exhibition at Weintraub Gallery took place from October 7, 1987 to on or about November 7, 1987. PTO ¶ 8.

10. On or about October 27, 1987, Franzen agreed to purchase from Weintraub four Miro sculptures in the exhibition for prices totalling $380,000. Weintraub gave Franzen an invoice for the four sculptures. Franzen agreed to pay $200,000 within 30 days, with the balance to be paid thereafter. Franzen endorsed the invoice with

1. Citations with the letters "PTO" refer to the stipulated facts in the Pre-Trial Order. Citations with the letter "T" refer to the trial transcript. Citations with "Jt.Exh." refer to the joint exhibits in the Pre-Trial Order.

2. The parties have converted all currency valuations relevant to this proceeding into United States dollars. *See* Jt.Exh. 8. The court, when referring to the respective prices for the works of art will refer to the amount only in dollars.

the notation "If I can, I will pay earlier" and signed his name. PTO ¶ 9; Jt.Exh. 4.

11. The four sculptures which Franzen agreed to purchase were:

(1) *Personnage*, 1969, # 2/2. The price that Weintraub agreed to pay Linssen for this work was $62,183. The price that Linssen agreed to pay Maeght was $45,556.

(2) *Personnage*, 1970–71, # 1/4. The price that Weintraub agreed to pay Linssen for this work was $128,972. The price that Linssen agreed to pay Maeght was $98,433.

(3) *Fillette*, 1969, # 2/3. The price that Weintraub agreed to pay Linssen for this work was $50,668. The price that Linssen agreed to pay Maeght was $32,540.

(4) *Tete*, 1970, # 4/4. The price that Weintraub agreed to pay Linssen for this work was $57,577. The price that Linssen agreed to pay Maeght was $41,488.

PTO ¶ 10; Jt.Exh. 8.

12. On November 14, 1987, Weintraub wrote to Linssen informing him that the four Miro sculptures had been sold, and that he expected "payment in full within the month." PTO ¶ 11; Jt.Exh. 5.

13. Franzen never paid for the four sculptures which he had agreed to purchase from Weintraub. PTO ¶ 12; T. 74.

14. Weintraub never shipped the four sculptures to Franzen. PTO ¶ 12; T. 73–74.

15. Linssen, taking the position that a sale had occured, made several attempts to collect payment from Weintraub for the four sculptures. Weintraub, however, refused to pay Linssen until he himself had been paid for the works by Franzen. T. 17, 75.

16. All of the works from the exhibition, with one exception not relevant to this proceeding, were returned to their owner—Maeght. T. 4–5.

17. On or about December 22, 1987, Linssen, who was in California on business, called Weintraub, who was in Florida on vacation, to further discuss payment for the four sculptures. Linssen and his assistant—Mali Gesmundo—decided that it would be a good idea for someone to witness the conversation between Linssen and Weintraub. Therefore, without Weintraub's knowledge, Gesmundo listened in on the conversation from a separate telephone extension. T. 21–22, 50. During the conversation, Weintraub told Linssen that he would have the money for the four sculptures by January 6, 1988. T. 17–18, 45–46, 61–62.

18. To memorialize the phone conversation, Linssen sent Weintraub a letter, dated December 29, 1987, indicating, *inter alia*, that Linssen expected to be paid in full for the four sculptures by January 6, 1988. Along with the letter, Linssen sent Weintraub an invoice for the four sculptures. Weintraub made no written response to the letter and invoice. Jt.Exh. 6, 7.

19. Weintraub never paid Linssen for the four sculptures and Linssen never paid Maeght. PTO ¶ 14.

20. Weintraub attempted, unsuccessfully, to "settle the Miro exhibition" with Linssen by offering to purchase the Miro sculpture *Constellation* for $220,000. Jt. Exh. 9; T. 35–40, 86–87. Weintraub's offer was $23,855 less than the previously agreed upon price for this work under the agreement. Jt.Exh. 2, 8; T. 40–41; 87.

21. Weintraub never purchased any of the works on consignment under the agreement. PTO ¶ 16.

## DISCUSSION

### A. *Jurisdiction*

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (1982).

### B. *The Four Sculptures*

█ Linssen seems to concede, correctly, that Weintraub's obligation to pay him under the terms of the agreement—apart from the guarantee clause to be discussed below—was contingent upon Weintraub's sale of any of the consigned works. Under New York law, a "sale" consists of passing

title from the seller to a buyer for a price. Uniform Commercial Code § 2–401 (McKinney 1964). Unless the parties agree otherwise, title passes to the buyer when the seller completes his performance with respect to the physical delivery of the goods. *Id.* Accordingly, since Weintraub never delivered the four works to Franzen, no "sale" took place and Weintraub is not liable to Linssen under the written consignment agreement.

 Linssen, however, claims that Weintraub's representation during their December 22 telephone conversation that he would pay Linssen for the four sculptures by January 6 constituted a promise to purchase the works regardless of whether Franzen ever paid Weintraub. Put another way, Linssen argues that even if there were no written agreement between he and Weintraub, Weintraub's "promise" to pay for the sculptures by January 6 constituted a binding contract to do so.

The court finds Linssen's argument unpersuasive. It is true that during his December 22 telephone call with Linssen, Weintraub agreed to pay for the four sculptures by January 6. However, it is clear that Weintraub's statement—when viewed in light of all the surrounding circumstances—was only meant as an indication that he expected payment from Franzen by that time. To find that Weintraub's agreeing to pay Linssen by January 6 constituted a binding promise to purchase the four works regardless of whether Franzen ever paid for them would require the court to disregard the written agreement between the parties, distort the trial testimony of the witnesses, and interpret the phone conversation without any regard to the surrounding factual circumstances.[3]

## C. *The $200,000 Guarantee*

 Weintraub does not dispute that his breach of the guarantee clause the agreement caused Linssen to suffer a lost profit of $52,000.[4] Defendant's Post–Trial Brief at 11. However, Weintraub argues that Linssen failed to mitigate his damages by failing to accept Weintraub's offer to purchase *Constellation* for $220,000. Jt.Exh. 9; T. 35–40, 86–87. *See Tynan Incinerator Co. v. International Fidelity Ins. Co.,* 117 A.D.2d 796, 499 N.Y.S.2d 118 (2d Dep't 1986) (injured party must make reasonable effort to mitigate damages); A. Corbin, *Corbin on Contracts,* Damages § 1039 (a plaintiff can not recover for damages which could have been avoided with reasonable effort and without risk of other substantial loss or injury). Weintraub notes that had Linssen accepted his offer for *Constellation,* Linssen would have made a profit of $36,149. Thus, Weintraub argues that his liability to Linssen should be limited to $15,851—the difference between Linssen's lost profit under the guarantee clause ($52,000) and the profit he would have made on the sale of *Constellation* had he accepted Weintraub's offer ($36,149).

As Linssen points out, however, Weintraub's offer of $220,000 for *Constellation* was $23,855 less than the agreement price of $243,855. *See* Jt.Exh. 2, 8; T. 40–41, 87. Further, Weintraub's offer was made as an invitation to "settle" the Miro exhibition. Jt.Exh. 9; T. 36. Thus, had Linssen accepted the offer, his claim against Weintraub arising from the guarantee clause of the agreement would probably have been barred by the doctrine of accord and satisfaction. *See Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 724 (S.D.N.Y.1986). For this reason, Weintraub's assertion that Linssen should have accepted the offer and then sued only for the balance of his damages is not per-

---

**3.** Accordingly, since the court finds that Weintraub's statement was not an independent and absolute promise to purchase the four works, it need not decide whether such a promise would have been enforceable against Weintraub.

**4.** $52,000 represents Linssen's average profit margin of 26% on a sale of $200,000 worth of consigned works at the discounted prices to

Weintraub. *See* Jt.Exh. 8. Weintraub originally sought to avoid his obligation under the guarantee clause of the agreement by claiming that the entire agreement was procured by misrepresentations made by Linssen. Pre–Trial Order at 10. Realizing that this claim lacks merit, however, Weintraub has candidly withdrawn it. Defendant's Post–Trial Brief at 12.

suasive. *See* Defendant's Post–Trial Brief at 11. Thus, the court finds that Linssen was fully justified in refusing Weintraub's offer to "settle" and in no way breached his duty to use reasonable efforts to mitigate his damages. Accordingly, Weintraub is liable to Linssen for $52,000—the full profit Linssen would have received under the guarantee clause of the agreement.

### D. *Franzen's Liability*

The uncontroverted evidence indicates that during the exhibition, Franzen—against whom a default judgment has been entered (T. 5)—agreed to purchase four Miro works from Weintraub for a total price of $380,000. PTO ¶ 9; T. 72–73. Weintraub issued Franzen an invoice for the works which Franzen signed. Jt.Exh. 4. The total price that Weintraub would have had to pay Linssen for the four works was $299,400. Thus, Franzen's refusal to pay for the works, which breached his contract to purchase them, caused Weintraub to suffer a lost profit of $80,600. Moreover, had Franzen not breached his contract to purchase the four works, Linssen would not have had any claim against Weintraub.[5] Accordingly, Weintraub is entitled to a judgment against Franzen for $132,600—Weintraub's lost profits from the sale of the four works ($80,600) plus Weintraub's liability to Linssen under the guarantee clause of the agreement ($52,000).

### CONCLUSION

Weintraub is liable to Linssen for damages in the amount of $52,000, and Franzen is liable to Weintraub for damages in the amount of $132,600.

So ordered.

---

5. The fact that the sale of at least $200,000 worth of the art to a third-party purchaser would have extinguished Weintraub's obligation under the guarantee clause of the agreement is not disputed. *Cf.* T. 7 (Linssen concedes that he can not recover for lost profits on the sale of the four sculptures and also for lost profits under the guarantee clause).