■ JOHN BURR et al., Respondents, v EVEREADY INSURANCE COMPANY, Appellant, et al., Defendants. [677 NYS2d 547] —Judgment, Supreme Court, Bronx County (Barry Salman, J.), entered on or about June 23, 1997, which invalidated insurer Eveready's disclaimer of liability coverage as to its named insureds, M. A. Hittner & Sons and Michael Lamberti, and confirmed coverage as of the date of the accident, reversed, on the law, without costs, and judgment granted to Eveready, declaring that its disclaimer of liability and denial of coverage is valid and effective.

As captioned, this appeal represents only the third-party portion of a personal injury action. The parties designated as "plaintiffs" and "defendants" herein are actually the defendants and third-party plaintiffs and third-party defendants, respectively, in the lawsuit.

The case involves a three-car accident in 1988, in which vehicle No. 1 (owned and operated by "plaintiffs") stopped at an intersection to make a turn, causing vehicle No. 2 (carrying injured parties Shands and Barnes) to swerve, resulting in ve-

hicle No. 3 (owned and operated by "defendants" Hittner and Lamberti) striking vehicle No. 2 from the rear and driving it into vehicle No. 1. The vehicle No. 2 occupants brought suit in 1990 against the owner/driver of vehicle No. 1, who in turn brought a third-party action in 1992 against the owner/driver of vehicle No. 3 for judgment over. "Defendant" Eveready is the insurer of vehicle No. 3. The issue on the appeal is whether Eveready ever received a timely notice of the claim on behalf of its client. Eveready disclaimed coverage, asserting that it first learned of the claim upon receipt of a notice of default from the attorney for the "plaintiffs" in the third-party action in 1993.

The vehicle No. 1 "plaintiffs" summoned the attorney for the occupants of vehicle No. 2 (the original plaintiffs) as a witness to establish that Eveready had been sent notification of the claim within four weeks of the accident, some 20 months before the original litigation was initiated. He testified that his office handles numerous personal injury cases, and the normal routine is that after the claim data is gathered and entered in the computer, several documents are generated, including a letter to the client, notice of retainer, request for medical records, and *notification of the claim to offending motorists/owners/ insurers*. The attorney then reviews the correspondence, signs it, folds it into an envelope, and places it in an out-basket for pick-up at the end of the day by a clerk who applies postage and mails it. If the letter never goes out, the original will still be in the file with the office copy, and if the letter is returned undelivered, it, too, will be returned to the file. According to the testimony, no such irregularities were noted in this instance. To back up this general testimony about his office practice and procedure, the attorney offered into evidence an office copy of the letter purportedly sent to the vehicle No. 3 operator and owner, *and the latter's insurer*.

Testimony as to an office practice or procedure in the regular course of business is sufficient to establish a presumption of mailing and receipt (*see, Spangenberg v Chaloupka*, 229 AD2d 482). In order to rebut the presumption, the addressee must go beyond mere denial of receipt and actually demonstrate that the server's routine office practice was *not* followed, or was "so careless that it would be unreasonable to assume that the notice was mailed" (*Nassau Ins. Co. v Murray*, 46 NY2d 828, 830).

Evidence submitted on behalf of the parties injured in vehicle No. 2 raises concern about the routine office practice and procedure of the serving attorney. The attorney witness offered a purported copy of a letter addressed to the driver and owner

(with "cc" to the insurer) of vehicle No. 3. It is interesting to note that these injured parties never did sue the vehicle No. 3 parties, instead commencing their action 20 months later against only the vehicle No. 1 parties.

Granted, the subject of the attorney's testimony had only to do with notice to the vehicle No. 3 insurer. However, there is another curious feature to this purported letter copy. Close examination of the one-page document reveals that it bears, from top to bottom, a masthead of the firm, the date (September 27, 1988), addressees (operator and owner of vehicle No. 3), three lines of identifying information about the case, a salutation, a three-paragraph body, a signature element, and a "cc" (name and address of Eveready, with the indication that it is the insurer of the owner of vehicle No. 3).

There is also an additional line, pre-positioned neatly between the information data and the salutation, which reads simply "INSURANCE COMPANY COPY". If the letter already bore a "cc" to Eveready, then standard practice would seem to dictate that one copy in the file would be sufficient to establish that the letter had been sent to three different parties (the addressee driver and owner, and the "cc" insurer). Does the insertion of "INSURANCE COMPANY COPY" here mean that there should also have been in the file another copy of the letter sent only to the driver and owner?

In light of Eveready's allegation that the purported notice was actually prepared years later, after completion of discovery, this one unexplained aspect of the copy produced in evidence is enough to raise doubts as to whether standard office practice and procedure were followed in this case. This suspect irregularity is enough to rebut the presumption of regularity in mailing the notice. Accordingly, the judgment that invalidated Eveready's disclaimer of liability coverage by reason of untimely notice is reversed. Concur—Sullivan, J. P., Rosenberger and Wallach, JJ.

Tom and Saxe, JJ., dissent in a memorandum by Tom, J., as follows: I respectfully dissent and would affirm. In light of the testimony of the claimant's attorney that, in accordance with the standard operating procedure in his law office designed to promote error-free posting of insurance claim notices, he duly addressed and timely mailed a notice-of-claim letter to Eveready, the insurer of defendants Lamberti and M. A. Hittner & Sons, a presumption arises that that notice was received (*see, Nassau Ins. Co. v Murray*, 46 NY2d 828, 829). Eveready's less than compelling denial of its receipt of the notice of claim letter, together with the concession of its claims manager that

the notice of claim letter could have been received and thereafter misplaced, was insufficient to rebut the presumption of mailing (*supra*, at 829-830; *compare, Electronic Servs. Intl. v Silvers*, 233 AD2d 361, 362, *lv denied* 89 NY2d 816). The majority finds it suspicious that the purported copy of the notice letter offered by plaintiffs' counsel should contain a "cc" notation on the bottom indicating a copy sent to the carrier, and a notation elsewhere on the letter also indicating that it was the copy of the letter sent to the carrier. The majority suggests that this either was an unnecessary redundancy (i.e., why "cc" to a party and stamp the copy as that party's copy?), or that consistency would dictate that additional copies of the notice letter, marked as copies to the driver and owner, also should have been in the file. However, I am not persuaded that the apparent redundancy, or omission, depending on how one reads the majority's point, compels any particular conclusion about the matter actually in issue—whether the presumption of mailing operative in this case is forcefully rebutted. It bears noting that this is an appeal from judgment entered after trial, where the court sat as trier of fact, evaluating credibility. I find no basis on this record to disturb those findings or to conclude that the supposed anomaly noted by the majority sufficiently contradicts evidence of mailing. Rather, the record supports the trial court's findings that the presumption of the mailing and receipt of notice was established, and was effectively unrebutted.