**Michael Q. CAREY, Plaintiff,**

v.

**MUI–HIN LAU, Ho Sih Fong, Kau–Ying Lau, Ying Lup Lau, a/k/a Michael Lau Wai Yau Chi, and Ying Tak Lau, a/k/a Daniel Lau Defendants.**

### No. 99 CIV. 0737(CBM).

United States District Court,
S.D. New York.

April 12, 2001.

Michael Q. Carey, Carey & Associates, New York City, David A. Cutner, Cutner & Associates, P.C., New York City, for Plaintiff.

Dinesh H. Singhal, Law Office of Trang Q. Tran, Houston, TX, for Defendants.

### AMENDED MEMORANDUM OPINION

MOTLEY, District Judge.

*Pro se* plaintiff, Michael Carey, brings this diversity action to recover attorneys' fees for services rendered to defendants, Mui–Hin Lau, Ho Sih Fong, Kau–Ying Lau, Ying Lup Lau, a/k/a Michael Lau, Wai Yau Chi, and Ying Tak Lau, a/k/a Daniel Lau. Plaintiff filed the complaint on February 1, 1999, claiming breach of contract, quantum meruit, account stated, and contractual interest. Plaintiff claims that he is owed $449,255.32 in outstanding legal

fees. Plaintiff also claims over $503,303.00 in interest on the unpaid legal fees.

On June 26, 2000, this court granted Wai Yau Chi's motion for summary judgment dismissing plaintiff's claims against her. *See* June 26, 2000 Order. Ying Lup Lau, a/k/a Michael Lau is now deceased. Plaintiff now brings this motion for partial summary judgment as to liability against Mui–Hin Lau, Ho–Sih Fong, and their son, Ying Tak Lau, a/k/a Daniel Lau. These three defendants have cross-moved for summary judgment dismissing plaintiff's claims against them. Plaintiff also brings a motion for a default judgment against defendant Kau–Ying Lau.

For the reasons stated below, this court GRANTS plaintiff's motion for partial summary judgment and GRANTS plaintiff's motion for a default judgment. This court DENIES the defendants' cross-motion for summary judgment.

### I. BACKGROUND [1]

In 1984, Richardson Greenshields Securities, Inc. ("Richardson"), a registered futures commission merchant, brought a proceeding in this court against defendants Mui–Hin Lau, Ho Sih Fong, Kau–Ying Lau, Ying Lup Lau ("Michael Lau"), and Wai Yau Chi ("Cathy Lau") (collectively "Richardson defendants") entitled *Richardson Greenshields Securities, Inc. v. Mui–Hin Lau, et. al.*, 84 Civ. 6134 ("Richardson action"). Richardson claimed unpaid commissions for commodities trading and sought separate individual amounts of damages against each defendant. The total amount of damages against all defendants was approximately $167,000.

The Lau family members involved in the underlying action include the following:

---

1. The following facts are drawn from the parties' moving papers unless otherwise indicated.

Mui–Hin Lau and his wife Ho Sih Fong; Mui–Hin Lau's sister Kau–Ying Lau; Michael Lau and Daniel Lau who are Mui–Hin Lau and Ho Sih Fong's two sons; and Cathy Lau who was married to Michael Lau. Mui–Hin Lau and Ho Sih Fong live in Hong Kong; Kau–Ying Lau lives in Canada; and Michael, Daniel, and Cathy Lau are or were residents of Texas. The Laus' accounts at Richardson were held in the names of the Richardson defendants; however, all of the trading activity in these accounts was directed by Michael Lau or Daniel Lau. Daniel Lau was not a holder of any of the Richardson accounts and was not a defendant in the Richardson action. *See Richardson Greenshields Securities Inc. v. Lau,* 819 F.Supp. 1246, 1253–55 (S.D.N.Y.1993)

In December 1984, the Richardson defendants asked plaintiff to represent them in connection with the Richardson action. Plaintiff was formally retained in January 1985. Each Richardson defendant signed a written retainer agreement prepared by plaintiff dated January 25, 1985 ("first retainer"). The first retainer set out hourly fees of $125 for each partner, $75 to $100 for each associate, $40 for each paralegal, and $20 for overtime secretarial services. *See* Carey Decl., Ex. 3–7. The first retainer did not provide that the Richardson defendants would be held jointly and severally liable for plaintiff's services and did not state that interest would be charged for unpaid legal fees. *See id.* As to counterclaims, the first retainer stated that the Richardson defendants did not wish to pursue counterclaims "at this time." *See id.*

In 1986, each Richardson defendant and Daniel Lau (collectively "defendants") asserted counterclaims or claims against Richardson and four of Richardson's employees alleging Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, Commodity Exchange Act violations, fraud, breach of contract, breach of fiduciary duty, conversion, money had and received, negligence and constructive trust ("Lau action"). Defendants sought recovery of approximately $2 million in compensatory damages, $6 million in treble damages under RICO, and attorneys' fees. These counterclaims and claims were filed on July 2, 1986. Each defendant signed a written retainer with plaintiff dated July 3, 1986 ("second retainer"). The second retainer provided for defendants to pay plaintiff on an hourly basis for services performed plus a 10% contingency fee. *See* Carey Decl., Ex. 8–12. The second retainer set out hourly fees of $125 for each partner, $75 to $100 for each associate, $40 for each paralegal, $30 for computer data entry services, and $20 for secretarial services. *See id.* The second retainer did not provide that the defendants would be held jointly and severally liable for plaintiff's services and did not state that interest would be charged for unpaid legal fees. *See id.* Plaintiff performed legal services for the Richardson defendants from December 1984, and for Daniel Lau from July 3, 1986, until he withdrew as defendants' attorney for nonpayment of fees on June 2, 1993. The last date for which plaintiff seeks legal fees is January 17, 1994.

Plaintiff used Daniel and Michael Lau as intermediaries to communicate with Mui–Hin Lau, Ho Sih Fong, Kau–Ying Lau, and Cathy Lau throughout the entire course of the representation. Plaintiff also sent copies of correspondence, legal documents, and invoices to all of the defendants during the course of his representation of them. The invoices plaintiff sent were detailed and itemized and included computer reports of time and disbursements. Each of the defendants received at least some of the plaintiff's invoices. Although many of plaintiff's invoices were paid, not all invoices were paid in full. None of the

defendants ever complained to plaintiff about the invoices or fees until February 1990 when defendants informed plaintiff that they were no longer able to pay his fees. However, defendants paid plaintiff $190,000 after February 1990. In total, defendants have paid plaintiff a total of $511,293.71 from June 24, 1985 to September 23, 1992.

Plaintiff notified defendants that he would be charging them interest on the unpaid fees for the first time on July 19, 1991. In a letter to defendants, plaintiff said he was charging interest for the last year and a half but did not mention interest charges in the future. *See* Carey Decl., Ex. 22. Interest charges were then included in all future invoices. Plaintiff originally computed interest at 18%; however, plaintiff reduced the amount of interest to 12% on May 25, 1994, one year after plaintiff terminated his relationship with defendants. *See* Carey Decl., Ex. 26. The change to 12% per annum interest was retroactive and was applied to all past bills. Furthermore, plaintiff has amended the period for which he seeks interest payments and states in his motion for partial summary judgment that he seeks interest payments on unpaid legal fees as of November 1, 1991. At the November 1, 2000 pre-trial conference, plaintiff stated that the interest charges to date amounted to $503,303.00. *See* Hr'g Tr. at 29. Plaintiff is seeking interest up to the date of judgment as well as post-judgment interest. *See* Hr'g Tr. at 31.

The Richardson action and Lau action were resolved by this court on April 1, 1993 after being tried before the court from March 31, 1992 to April 29, 1992. For a complete account of the disposition of this case, see *Richardson Greenshields Securities Inc. v. Lau,* 819 F.Supp. 1246 (S.D.N.Y.1993). To briefly summarize the outcome of the case, this court found that the Richardson defendants, with the ex-

ception of Wai Yau Chi, were liable for account deficits in the Richardson trading accounts, because Michael Lau and Daniel Lau acted with apparent authority to trade in the family accounts and because the account holders ratified the trades made by Michael Lau and Daniel Lau. *See Richardson,* 819 F.Supp. at 1259, 1260. This court also dismissed all of defendants counterclaims because (1) defendants did not meet their burden of proof as to any of the counterclaims; (2) the trading in the family accounts was supported by the doctrine of apparent authority or ratified by the holders of the accounts; and (3) the defendants were equitably estopped from recovering because "the moneys lost were not their own but belonged to Wing Sang Lau, the uncle of Michael and Daniel Lau." *See Richardson,* 819 F.Supp. at 1262, 1263. As to this last point, this court stated that:

> Wing Sang Lau's entire $2,000,000 was siphoned [without his permission or knowledge] by Daniel and Michael Lau to pay the margin calls on the Lau commodity accounts.... Thus the defendant Lau brothers cannot assert that they, as the virtual thieves of these funds, have standing to seek their recovery.

*Richardson,* 819 F.Supp. at 1262.

On June 2, 1992, this court granted plaintiff's motion to withdraw as counsel for the Lau family. *See* June 2, 1992 Order.

## II. DISCUSSION

### A. Motion for Summary Judgment

Plaintiff moves for partial summary judgment against defendants as to liability, and defendants cross-move for summary judgment on plaintiff's claims. According to the Federal Rules of Civil Procedure, summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing a prima facie case demonstrating the lack of a genuine issue of material fact. Once the moving party meets this burden, the non-moving party has the burden of providing enough evidence to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In considering a summary judgment motion, all of the facts must be viewed in the most favorable manner for the non-moving party. *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994).

Plaintiff argues that he is entitled to summary judgment as to liability against the defendants on three different theories: (1) breach of contract, (2) quantum meruit, and (3) account stated. Plaintiff also argues that he is entitled to summary judgment as to defendants' liability for interest on all outstanding bills.

Defendants' opposition argument focuses on the question of whether Carey's fees were fair and reasonable.

### 1. Breach of Contract

■ Under New York law, plaintiff in a breach of contract action must prove: (1) a contract, (2) performance by plaintiff, (3) breach of the contract by the defendants, and (4) damages. *See First Investors Corp. v. Liberty Mutual Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998). Plaintiff argues that each defendant entered into a retainer agreement with him; that he performed under the retainer from December 1984 to May 1993; that defendants failed to pay their bills in full commencing in November 1991; thereby causing damages to plaintiff. Plaintiff contends that defendants

only started objecting to his legal fees after they lost the Richardson and Lau actions.

■ Under New York law, contracts between attorneys and clients are of special interest and concern to the courts. *See Cohen v. Ryan*, 34 A.D.2d 789, 311 N.Y.S.2d 644, 645 (N.Y.App.Div.1970). An attorney has the burden of proving that the arrangement for compensation was fair and reasonable and fully comprehended by the client. *See Cohen*, 311 N.Y.S.2d at 645. However, "[u]nder New York law, a private retainer agreement is viewed as presumptively fair 'in the absence of fraud, deceit, overreaching, or undue influence.'" *Uy v. Bronx Municipal Hosp. Ctr.*, 182 F.3d 152, (2d Cir.1999) (*quoting Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F.Supp. 527, 531 (S.D.N.Y.1984)).

■ Defendants argue that the second retainer is invalid because plaintiff never explained the terms of the agreement to defendants. Defendants state that they are not attorneys and some of the defendants do not even understand English. Defendants also state that pursuing counterclaims against Richardson was plaintiff's idea, that the counterclaims were extremely weak, that some of the defendants actually lacked standing to bring the counterclaims, and that Carey never pursued settlement.

Despite defendants' protestations, the following facts are not in dispute. Mui–Hin Lau, Michael Lau, and Daniel Lau are sophisticated businesspeople. *See Richardson*, 819 F.Supp. at 1251; *see also* Carey Decl. at ¶¶ 27, 29. Mui–Hin Lau and Ho Sih Fong relied on their two sons, Michael and Daniel Lau, to keep them updated about the progress of the case and to act as translators between themselves and plaintiff. *See* Carey Decl. at ¶¶ 43–50. Plaintiff periodically sent detailed invoices and correspondence about the case to de-

fendants and met with varying degrees of frequency with all members of the Lau family involved in the underlying action. *See* Carey Decl. at ¶¶ 37–43. Although the defendants lost on all of their counterclaims, this court found that the claims were not frivolous or brought in bad faith. *See* Carey Decl., Ex. 36, January 21, 1994 Richardson Hr'g Tr. at 156–57. Although this court ultimately found that Daniel Lau lacked standing to bring any counterclaims, the facts were such that plaintiff could have believed, in good faith, that Daniel Lau had standing to bring claims against Richardson. *See* Carey Decl. at ¶ 32. The above facts do not demonstrate a case of fraud, deceit, overreaching, or undue influence. Nor do these facts demonstrate a lack of communication between plaintiff and defendants such that defendants would have been unaware of the status or the consequences of plaintiff's legal representation.

■ As to the reasonableness of plaintiff's fee, the fee arrangement contained in the second retainer reflects the outcome of the defendants' negotiations with plaintiff regarding his fee. Defendants negotiated with plaintiff for his hourly fees to remain at the same level charged in the first retainer, despite the fact that the second retainer was signed a year and a half after the first retainer. Plaintiff states that he charged other clients during the period 1985–1992 an hourly rate of $175 to $250. *See* Carey Decl. at ¶ 7. However, defendants bargained with plaintiff for a hybrid fee arrangement whereby the hourly charges would stay constant with the addition of a 10% contingency fee. *See* Carey Decl. at ¶ 9. After bargaining for this fee arrangement, defendants cannot now, after losing the Richardson and Lau actions, claim that the hourly fees are unfair or unreasonable. Therefore, there are no genuine issues of material fact as to the reasonableness of plaintiff's fees.

Because plaintiff has shown a valid contract for legal services with defendants and because defendants have breached the contract by failing to submit payment on all legal services controlled by the second retainer, defendants are liable for unpaid legal fees incurred prior to and including June 2, 1993, the day plaintiff withdrew as defendants' counsel.

**2. Quantum Meruit**

■ Plaintiff can also recover against defendants under the theory of quantum meruit. To recover in quantum meruit under New York law, plaintiff must show the reasonable value of the services he performed, and (1) that he performed the services in good faith, (2) that defendants accepted the services, and (3) that he expected compensation therefor. *LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham,* 185 F.3d 61, 66 (2d Cir.1999). Plaintiff states that he performed his services in good faith, that defendants accepted his services for eight years, and he expected compensation. Plaintiff further states that his fees were fully detailed in itemized invoices and that no defendant ever questioned the reasonableness of the fees until after plaintiff commenced this suit.

■ Because defendants did not object to the invoices, they accepted the charges as the fair and reasonable value of plaintiff's services. *See Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 721 (S.D.N.Y.1986) (noting that under New York law a court can affirm "a grant of summary judgment in an action by an attorney who sued in quantum meruit for legal services rendered to a client, where the client denied neither hiring the attorney nor the attorney's performing services, but merely denied knowledge of the extent of the attorney's services or their value."). Plaintiff has shown as a matter of law that defendants are liable to plaintiff for unpaid

legal fees incurred prior to and including January 17, 1994.

### 3. Account Stated

■ Plaintiff may also recover under the theory of account stated. To recover on an account stated claim under New York law, plaintiff must prove the existence of an agreement between defendants and himself based upon prior transactions between them. *LeBoeuf, Lamb,* 185 F.3d at 64. Such an agreement is implied if plaintiff shows that (1) defendants received invoices from him, and (2) defendants failed to object within a reasonable time or defendants made partial payment on account. *See LeBoeuf, Lamb,* 185 F.3d at 64. This is true unless fraud, mistake, or other equitable considerations are shown. *Kramer, Levin,* 638 F.Supp. at 719.

■ Over the course of plaintiff's representation of defendants, defendants received plaintiff's invoices which were itemized and sent to all defendants. *See* Carey Decl., Ex. 29, Daniel Lau Dep. at 67, 69, 136; Ex. 30, Ho Sih Fong Dep. at 36. Furthermore, none of the defendants objected to any invoice for five to fourteen years. Plaintiff asserts that the first time an objection was made to the reasonableness of his fees was in response to his complaint. *See O'Connell and Aronowitz v. Gullo,* 229 A.D.2d 637, 644 N.Y.S.2d 870, 871–72 (N.Y.App.Div.1996) (holding that attorney's claim for account stated was established where client did not object to statement of account until attorney commenced proceeding to recover legal fees). Although defendants expressed an inability to pay in February 1990, that is not a legally sufficient objection to the account. *See Moses & Singer, LLP v. S & S Machinery Corp.,* 251 A.D.2d 271, 675 N.Y.S.2d 62 (N.Y.A.D.1998) (acknowledgment of inability to pay equals admission of liability as to the amount). In addition to their failure to object to plaintiff's invoices, defendants also made partial payments on the account in May 1992 and in September 1992. *See* Carey Decl., Ex. 2. "Under New York law, the making of such payments have been viewed as an 'acknowledgment of the correctness of the account.'" *Bresler v. Hostage,* 696 F.Supp. 46, 49 (S.D.N.Y.1988) (*quoting Kramer, Levin,* 638 F.Supp. at 720).

■ Defendants assert that plaintiff cannot prove that the defendants received the invoices. However, given plaintiff's practice of mailing copies of the invoices to all defendants, *see* Carey Decl. at ¶ 38, and given Daniel Lau's and Ho Sih Fong's own admissions to receiving some of the invoices, there exists a presumption that each defendant received the mailed invoices. *See Hogarth v. New York City Health & Hospitals Corp.,* 2000 WL 375242, at *4 (S.D.N.Y.2000); *Burr v. Eveready Insurance Co.,* 253 A.D.2d 650, 677 N.Y.S.2d 547, 548 (N.Y.App.Div.1998) ("Testimony as to an office practice or procedure in the regular course of business is sufficient to establish a presumption of mailing and receipt.").

■ Defendants also argue that the invoices were not correct. However, under New York law, "[i]t is not necessary [for an attorney] to establish the reasonableness of the fee since the client's act of holding the statement without objection will be construed as acquiescence as to its correctness." *O'Connell,* 644 N.Y.S.2d at 871.

Because plaintiff has succeeded as a matter of law on his account stated claim, defendants are liable to plaintiff for unpaid legal fees incurred up to and including January 17, 1994.

### 4. Interest on Unpaid Fees

■ Plaintiff claims interest of 12% per annum on defendants' unpaid balances

from November 1, 1991 to the date of judgment. Although the second retainer did not provide for interest charges on unpaid legal fees, "[a]n account stated may include interest even though there was initially no express agreement to pay interest." *Davison v. Klaess,* 280 N.Y. 252, 256, 20 N.E.2d 744 (1939). When an attorney "(1) notifies the client that the lawyer intends to charge a reasonable interest rate on unpaid legal fees and (2) provides the client with a reasonable opportunity to pay the outstanding unpaid balance before any interest accrues, it is not improper to charge interest on unpaid legal fees although the retainer agreement is silent." NYC Eth. Op.2000–2, 2000 WL 704692, at *3 (N.Y.C.Assn.B.Comm.Prof.Jud.Eth.).

Plaintiff first notified defendants that interest would be charged on their unpaid legal fees on July 19, 1991. After this notification, all invoices which plaintiff sent to defendants included interest charges at a rate of 18%. On May 25, 1994, plaintiff retroactively amended his invoices such that interest charges were not applied until October 20, 1991 and amended his interest rate charges from 18% to 12%. Plaintiff, in this motion, again amends his demand such that interest charges do not apply until November 1, 1991. Plaintiff states that defendants received invoices which included interest charges from July 19, 1991 onward, that defendants never objected to these charges, and that defendants submitted some payments to plaintiff after receiving notice of the interest charges.

Plaintiff argues that because he amended the rate of interest and the date at which interest began to accrue, he has met the requirements of the New York City Bar Association's Committee on Professional and Judicial Ethics. This court notes that if plaintiff complied with the rule, compliance was accomplished in a rather unorthodox fashion. Nevertheless, it cannot be contested that defendants were put on adequate notice that plaintiff intended to charge interest on the unpaid legal fees. Nor can it be argued that defendants did not have sufficient opportunity to make payments on the unpaid legal fees. Indeed, plaintiff has been trying to arrange payment on the unpaid legal fees since 1991. Furthermore, this court does not find the rate of 12% to be an unreasonable interest rate.

Plaintiff has successfully stated an account for interest charges on the unpaid legal fees from November 1, 1991 to the date of judgment at a rate of 12%.

## B. Joint and Several Liability

Plaintiff argues that the defendants should be held jointly and severally liable for the unpaid legal fees and interest charges. Plaintiff argues that although a separate retainer was signed by each Lau, each retainer agreement contained the following language: "We will expect you to pay our bills within 20 days of the date of the bill, maintaining at all times the full $10,000 advance which has been paid to us by Michael Lau." Carey Decl., Ex. 8–12. Plaintiff sent all bills for all legal services to all defendants, and when any of the defendants remitted payment, plaintiff applied the payment to the family bill. *See* Carey Reply Decl., Ex. A. No defendant ever complained about plaintiff's method of billing.

Plaintiff states that the services he performed for each defendant involved the same research, discovery, and trial preparation. Plaintiff asserts that although Daniel Lau was not a defendant in the Richardson action, he was a claimant on the claims against Richardson and therefore should also be held jointly and severally liable because the unpaid bills date back to 1991 when Daniel Lau was under the second retainer agreement with plain-

tiff. *See Phillips Nizer Benjamin Krim & Ballon LLP v. Chu,* 240 A.D.2d 231, 659 N.Y.S.2d 4, 5 (N.Y.App.Div.1997) ("Although the retainer agreement excluded defendants ... from joint and several liability and required payment only for their proportionate share of the legal fees, since both of the underlying actions were based upon the same facts, and thus all discovery and research covered the issues in both actions, the court properly found all defendants jointly and severally liable for all of the fees."). Given the billing arrangement set up by plaintiff and defendants and given the reasoning underlying the *Phillips* decision, this court finds Mui–Hin Lau, Ho Sih Fong, and Daniel Lau jointly and severally liable for unpaid legal fees and interest charges.

### C. Motion for Default Judgment against Defendant Kau–Ying Lau

 Plaintiff seeks a default judgment against defendant Kau–Ying Lau. Rule 55 of the Federal Rules of Civil Procedure provides for entry of a default judgment against a party who has "failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." *See* FED. R. CIV. P. 55(a). Defendant Kau–Ying Lau was served with a summons and complaint on February 4, 1999 by personal service. Defendant, who lives in Canada, has not answered plaintiff's complaint or appeared in this action. Plaintiff filed an affidavit of service on March 16, 1999. *See* Carey Decl., Ex. 33. This court therefore grants plaintiff's motion for a default judgment against defendant Kau–Ying Lau.

### III. CONCLUSION

Because plaintiff has demonstrated that he is entitled to judgment as a matter of law and because there are no genuine issues of material fact in dispute, this court GRANTS plaintiff's partial motion for summary judgment against defendants Mui–Hin Lau, Ho Sih Fong, and Daniel Lau and DENIES defendants cross-motion for summary judgment. This court also GRANTS plaintiff's motion for a default judgment against Kau–Ying Lau.

Mui–Hin Lau, Ho Sih Fong, and Daniel Lau are jointly and severally liable to plaintiff for unpaid attorneys' fees incurred up to and including January 17, 1994 in the amount of $499,255.32 and for interest charges at 12% per annum from November 1, 1991 to the date of judgment to be calculated by the Judgment Clerk. Defendants are also liable to plaintiff for statutory post-judgment interest. *See* N.Y. C.P.L.R. 5002, 5003 (McKinney 2000).